GOLDSMITH D. JOHNES *vs.* JULIA A. BEERS AND OTHERS.

Fairfield Co., March T., 1889.  PARK, C. J., CARPENTER, PARDEE, and LOOMIS, Js.

A bequest to *A* and in case of his death to *B*, means, in the absence of anything else in the will that is decisive, the death of *A* in the lifetime of the testator; and if *A* survives the testator he takes the bequest absolutely.

And where estate was given in trust for the use of the testator's widow for life, and after her death to be converted into money and divided among his children, and in case of the death of any of the children the share of the decedent to go to his or her issue, if any, and if none, then to the surviving children or their issue, it was held that the general rule applied and that the children surviving the testator took their shares absolutely, subject to the widow's life use.

The testator gave the residue of his estate to a trustee, to be converted into money upon his decease, and the same to be divided into four equal parts, and one part paid to each of his four children absolutely; with a provision that if either of his children should die "before he or she shall have received his or her share" it should go to his or her lawful issue, if any, and if none, to his surviving children or the issue of such as might have died.   Held that the words "shall

Johnes v. Beers.

have received his or her share" were the legal equivalent of the words "shall have become entitled to receive his or her share," and that the children, surviving the testator, took absolutely at his death.

In the absence of a clear manifestation of intent on the part of a testator to postpone to an uncertain time after his death the vesting of the title to his estate in his children, the law prefers, and presumes that he intended, that it should vest at the moment when the will becomes operative.

[Argued March 27th—decided April 25th, 1889.]

SUIT for the construction of the will of Henry J. Beers ; brought to the Superior Court in Fairfield County. The allegations of the complaint were found true and the case reserved for advice. The case is fully stated in the opinion.

*J. H. Perry,* for Henry J. Beers, son and sole issue of William A. Beers, deceased.

1. We will consider first the provisions of the ninth paragraph of the will. William A. Beers, at the time of his death, had not received his one quarter share of so much of the residue as is represented by the "corner lot," valued at $2,500, $666.66 in mortgage notes, and $164.50 in cash. The lot had not been sold because a "sufficient and proper" price could not be obtained for it, although the executor had "endeavored so to do," while that the executor was not in a position to properly divide and pay over the mortgage notes and money appears from the fact that his last administration account had not been rendered when William A. Beers died. No suggestion of undue delay in realizing upon or paying over this property appears anywhere in the record. It was still properly in the executor's hands unconverted and undelivered. William A. Beers had, therefore, not "received his share" of the residue before his death. By the terms of the ninth paragraph the executor was directed, in respect to the residue, "to convert the whole thereof into money, and to divide the same into four equal parts and to pay one" to William A. Beers. If, disregarding these instructions, he had converted it little by little into money and paid several one quarter parts to William A. Beers, the

rights of this defendant to the remaining unpaid one quarter part ought not to be impaired simply because the whole share was not wholly unreceived. It cannot therefore be said that the contingency has not arisen in which the issue of William A. Beers is to receive one quarter of the property above referred to. It was certainly never "received" by William A. Beers, within any meaning of the word known to the dictionary. That the ordinary meaning of the words used contravenes no rule of law is plain from Lord ELDON's judgment in *Gaskell* v. *Harman*, 11 Ves., 497, in which he says:—"I admit the soundness of the proposition that if a testator thinks proper, whether prudently or not, to say distinctly, showing a manifest intention, that his legatees, pecuniary or residuary, shall not have the legacies or the residue unless they live to receive them in hard money, there is no rule against such intention if clearly expressed." See also 2 Wms. Exrs., 7th ed., 1329. That this intention is clearly expressed in the paragraph in question is our confident claim, and we make this claim relying upon the established practice of this court to permit testators to make their own wills, and when made to enforce rather than distort them. In 3 Jarman on Wills, 5 Am. ed., 672, will be found an extensive discussion of the question under consideration, founded upon the English decisions. To those there cited we would add *Elwin* v. *Elwin*, 8 Ves., 547, which strongly supports our claim, and a suggestion regarding *Minors* v. *Battison*, (Law Reps., 1 App. Cas. H. of L., 428,) which is there cited, and which is principally relied on by our opponents here, that in the opinion of Lord CHELMSFORD (p. 437,) not contradicted by the other lords, the property by other provisions of the will was vested in the legatees from the death of the testator, which certainly should distinguish that case from ours. See also, an extensive discussion of the subject in 2 Wms. Exrs., 1494, note *s*. We find no discussion of the question by our own court, and none of consequence in the reports of other states except in the case of *Manice* v. *Manice*, 43 N. York, 303. That the decisions and discussions above alluded to entirely

sustain our position, would be perhaps too much to claim. We do insist, however, that the plain meaning of the language used, as Henry J. Beers must have intended it to be understood, is as we claim; and that there is nothing in the above mentioned authorities which need prevent this court from allowing the testator to make his own will.

2. We shall next consider the provisions of the seventh paragraph of the will. We claim that the reversion in one quarter of the property held in trust for the widow's use, did not so vest in this defendant's father as to pass by his will. This depends upon the meaning of the expression, "in case of the death of any of my said children," which begins the second clause of the seventh paragraph. Unless this refers only to a death in the testator's lifetime, it cannot well be claimed that William A. Beers had any interest in the fund which he could dispose of. That it does not refer to a death in the testator's lifetime alone, but does refer to a death at any time before the " part " of the person so dying is " paid," must be clear. The only possible question about it, in our judgment, is, as to whether the death must occur before the " part " becomes payable, that is at the widow's death, or before it is actually " paid." In either event this defendant has a vested interest in it, and his mother, Julia A. Beers, has no interest in it whatever. The " part " is to be " paid " to persons who are designated by terms sufficiently explicit to at least absolutely exclude the legatees or grantees of a child dying in the widow's lifetime. " But although in the case of an immediate gift it is generally true that a bequest over in the event of the death of the preceding legatee, refers to that event occurring in the lifetime of the testator, yet this construction is only made *ex necessitate rei*, from the absence of any other period to which the words can be referred, as a testator is not supposed to contemplate the event of himself surviving the objects of his bounty; and, consequently, where there is another point of time to which such dying may be referred (as obviously is the case where the bequest is to take effect in possession at a period subsequent to the testator's decease), the words

in question are considered as extending to the event of the legatee dying in the interval between the testator's decease and the period of vesting in possession." 3 Jarman on Wills, 611. See also the cases there cited, and the pages following. "The rule which reads a gift to survivors simply as applying to persons living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred; and where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and of those only." Id., 588. These well established rules enable us to readily distinguish the case at bar from those of which *Phelps* v. *Phelps*, 55 Conn., 359, is the latest type.

*G. Stoddard*, for Julia A. Beers, widow of William A. Beers and sole legatee under his will.

PARDEE, J. Henry J. Beers executed his will in 1882, and died in 1884; his wife, one son, William A. Beers, and three daughters surviving. After giving to his wife the use of certain lands for life, the will proceeds as follows:

"*Fifth.* I order and direct my executor and trustee hereinafter named, to collect and set apart from my estate securities producing interest of the par value of the sum of seventy-five thousand dollars, and to collect and receive and pay the income derived therefrom as fast as the same shall be received to my said wife so long as she may live. . . . . .

"*Seventh.* Immediately upon the death of my said wife, or if she should die before me, then upon my decease, I order and direct my said executor and trustee to turn said aforementioned real and personal property into money, and to divide the same into four equal parts, and pay one part thereof to my son William A. Beers; one part to my daughter Mary B. Johnes, wife of Goldsmith D. Johnes; one part to my daughter Addie Curtiss, wife of Henry W. Curtiss; and the remaining part to my daughter Elizabeth G. Alsop, wife of Charles R. Alsop. In case of the death of any of my said children, I order and direct that the part

of him or her so dying be paid to his or her lawful issue, and in case he or they shall die without leaving any lawful issue, to pay and divide the part of him or her so dying to and amongst my surviving children and the lawful descendants of any of my said children, William, Mary, Addie and Elizabeth, who may have deceased, such descendants of children to receive *per stirpes* and not *per capita.*

" *Eighth.* For the purpose of carrying into effect the aforementioned purposes, I give, devise and bequeath to my said executor and trustee all of my said aforementioned real and personal estate, in trust however, giving and granting unto him full power and authority to sell and convey the same to effectuate the purposes of this my will.

" *Ninth.* All the rest, residue and remainder of my estate, both real and personal, and wheresoever the same may be situated, and the rents, issues and profits thereof, I give, devise and bequeath to my executor and trustee hereinafter named, in trust, nevertheless, upon my decease to convert the whole thereof into money, and to divide the same into four equal parts, and to pay one equal part thereof to my said son William A. Beers, absolutely; one part thereof to my said daughter Mary B. Johnes, absolutely; one part thereof to my said daughter Addie Curtiss, absolutely; and the remaining part to my said daughter Elizabeth G. Alsop, absolutely. In the event of the death of either of my said children before he or she shall have received his or her share, then to pay the share of him or her so dying to his or her lawful issue. In case he or she shall die without leaving lawful surviving issue, then to pay the part of the one so dying to my surviving children and to the issue of such of my said children, William, Mary, Addie and Elizabeth, who may have died, such issue to take *per stirpes* and not *per capita."*

Goldsmith D. Johnes, the husband of the testator's daughter Mary, was made executor and trustee. As such he asked the Superior Court for instructions as to his duty in the matter. In his complaint he alleges among other things, as follows :—

"Since the death of said testator, and on the 9th day of

December, 1887, William A. Beers died, leaving him surviving his widow, Julia A. Beers, and one son, Henry J. Beers.

"William A. Beers, bequeathed and devised all his estate to Julia A. Beers, his widow.

"Prior to the death of William A. Beers, the plaintiff, as executor and trustee, in accordance with the ninth section of the will, converted into money and paid over to the parties entitled thereto, all the residue and remainder therein referred to, except a lot of land in Fairfield, known as 'Corner Lot,' appraised at $2,500, and notes for $666.66, secured by a mortgage on a farm in Indiana, and about $164.50 in cash, as appears by the administration accounts rendered to the probate court, by the executor—the last thereof having been rendered February 18th, 1888.

"From the date of the probate of the will of Henry J. Beers, to the date of the death of William A. Beers, the 'Corner Lot' was in the possession and control of the plaintiff as executor and trustee.

"The mortgage and cash represent the proceeds of the sale of a certain farm, owned by Henry J. Beers, in the state of Indiana, which was sold by the executor prior to the death of William A. Beers, and a portion of the cash proceeds derived therefrom divided among said legatees and devisees, including William A. Beers.

"Prior to his death William A. Beers requested the executor to convert the 'Corner Lot' into cash, provided that it could be done without selling the same at a sacrifice, and distribute the proceeds thereof among said legatees and devisees; but the executor could not realize such price therefor as was believed by all the heirs to be sufficient and proper and for the best interests of all concerned therein, although he endeavored so to do, and therefore the lot was not sold.

"The mortgage was taken by the executor to secure a portion of the purchase money of the farm so sold as aforesaid by him.

"In accordance with the fifth clause of the will of Henry

J. Beers, interest producing securities of the par value of $75,000 were set apart by the executor, the income derived therefrom to be paid to Priscilla A. Beers, his widow, during life.   She is still living.

"Various questions have arisen, and various claims have been made by the different persons hereinbefore named, rel- ative to the construction and legal effect of certain of the provisions and trusts in said will contained, among which are the following:—

"1st.  Whether the cash in the hands of the executor and trustee, and the proceeds arising from the note and mortgage and the corner lot, are to be paid to Henry J. Beers, the sole surviving issue of William A. Beers, or to Julia A. Beers, as executrix and sole legatee and devisee under the will of William A. Beers.

"2d.  Whether, in the event of the death of Priscilla A. Beers, the share which William A. Beers would have taken, if living, of the real and personal estate devised and bequeathed in the second, third and fifth sections of said will, for the benefit of Priscilla A., during her life, shall be paid to Henry J. Beers or his heirs, or to Julia A. Beers or her heirs."

The questions are reserved for the advice of this court.

The cited clauses make it quite certain that it was the intention of the testator to give his entire estate to his children absolutely; the whole of it in right, at his death; the possession and enjoyment of a part then, of the remainder at the death of his wife.

At the execution of the will it was of course unknown whether any one of his children would survive him; unknown in case the death of any one preceded his own, whether that one would or would not leave a child or children surviving.

Therefore, that he might die testate as to all of his estate, and might avoid the necessity for another will, he so framed this as to meet the possibilities in this regard.

In the absence of a clear manifestation of intent on the part of a testator to postpone to an uncertain and possibly

distant time after his death the vesting of the title to his estate in his children, the nearest objects of his love and bounty, the law prefers, and presumes he intended, that it should vest at the moment when the will should become operative.

Of course the testator was well aware of the possibility of long delay in the satisfactory conversion of the entire assets of an estate into money, in adjusting claims against it, and in reaching the point of final distribution. But unless he so says explicitly, it cannot be presumed to be his will that either unavoidable or permitted delays should put it in the power of an executor to carry to a grandson an estate which he intended for his son.

· There is every presumption in favor of a father's desire, circumstances permitting, that his children should take his estate in the form in which he leaves it invested. But, as there may be difficulties attending satisfactory division in specie among numerous heirs, testators often provide for melting the estate into money for absolute equality in division. That is the extent of the testator's wish. His provision for division in that manner furnishes no foundation for the belief that he thereby intended to postpone beyond his death the vesting in his children of the right to his estate.

In the seventh clause the testator says that, "in case of the death of any of my said children, I order and direct that the part of him or her so dying be paid to his or her lawful issue. Here the death of the devisee, an absolutely certain event, not being by the testator associated with any circumstance or other event, the law refers it to the time of his own death. It is a well established rule that where there is a devise to $A$, and in case of his death, to $B$, if $A$ survives the testator he takes absolutely. *Lowfield* v. *Stoneham*, 2 Stra., 1261; *Hinckley* v. *Simmons*, 4 Ves., 160. And this is the language of the testator in the seventh paragraph.

The presumptions from the frame of this will that the testator preferred children to grandchildren, the vesting of his estate in his children at his death rather than upon an event of uncertain time thereafter, and the express provi-

sion for such vesting contained in the seventh clause—are
together too weighty to permit any inference to the con-
trary to be drawn from the words "shall have received" in
the ninth clause. In the light of all else in the will these
are to be interpreted as meaning "shall have become entitled
to receive by surviving me." In common understanding
also, the devisee of an estate in fee simple absolute "receives"
it at the moment of the testator's death, although the enjoy-
ment is postponed until the demands of creditors shall be
satisfied. He can convey and give title; he can devise.

The Superior Court is advised that the devises by the
seventh and ninth clauses vested in right in the children of
the testator at his death.

In this opinion the other judges concurred.