## HOLCOMB v. WRIGHT.

## WRIGHT v. HOLCOMB.

WILLS; TESTAMENTARY INTENT; EXECUTORY DEVISE; DESCENT;
DISTRIBUTION.

1. In construing a will the intention of the testator is paramount
   and must be given effect, unless clearly in conflict with some
   settled rule of law.
2. Where a testatrix bequeaths a fund to a trustee to pay the income
   thereof to her mother for life and after her death the principal
   to the infant son of the testatrix, and devises the residue of
   her estate to the infant, his heirs and assigns, with the proviso
   that if the infant should die during minority the entire estate,
   real, personal, and mixed, of which the son might die seized
   and possessed, including the trust fund, should go to the
   mother, the infant son will not be held to have such an
   absolute power of disposition over the residuary estate, as to
   defeat the executory devise to the mother.
3. If in such a case the infant son survives the executory devisee,
   the mother, but dies during his infancy, the executory devise
   and bequest is transmissible to the heirs and personal repre-
   sentatives of the mother, notwithstanding her death before
   the contingency happened by which she would have acquired
   the estate.
4. And if in such a case the executory devisee, the mother, left sur-
   viving her, as her sole heirs at law, a son, and the infant
   grandson who was the first devisee, the real estate upon the
   death of the infant grandson would vest in the son, or his
   heirs, and the personal estate would be distributable one-half
   to the son or his representatives and one-half to the repre-
   sentatives of the infant, under the Maryland acts of descent
   and distribution in force in this District.
5. Money derived from the sale of real estate after the death of the
   testatrix, in such a case, is to be treated as personalty, and so
   distributed.
6. The question of sale and conversion of real estate depends upon
   the law of the jurisdiction in which it is situated.

Nos. 349 and 355. Submitted November 9, 1894. Decided January 7, 1895.

HEARING of an appeal and a cross appeal from a decree

construing a will and directing distribution. *Affirmed in part and reversed in part.*

The COURT in its opinion stated the facts as follows:

The bill in this case was filed by Curtis W. Holcomb, the appellant in the first of the appeals now before the court, against Irvin B. Wright, Daniel Pratt Wright, Edward B. Wright, and Reginald Fendall, committee of the estate of John Brown Wright, a lunatic, the appellees in that appeal and the appellants in the second appeal, (both appeals being from the same decree,) for the purpose of obtaining a judicial construction of the will of Mrs. Emma C. Wright, deceased, and to have the rights of the parties claiming thereunder declared by the court. After answers filed by the defendants, the cause was, by an order of court, passed upon consent of the parties, referred to the auditor of the court, with power and direction to take testimony, and to report upon the law and the facts of the case. Instead of taking testimony, the parties agreed upon a statement of facts, upon which the auditor proceeded to make his report. The facts being undisputed, the auditor, upon an extensive examination of the authorities, made his report, in which he declared certain conclusions as properly deducible from the terms of the will, and the authorities bearing upon their construction; all of which are elaborated in the report.

Upon the coming in of this report, both the plaintiff and the defendants excepted to the legal conclusions of the auditor. These exceptions were heard, and the court below, coming to a different conclusion from that reached by the auditor, passed the decree of the 25th of May, 1894, from which these appeals are taken.

Mrs. Wright, the testatrix, died the 22d of May, 1888, and her will bears date the 25th of April, 1888, and was, shortly after the death of the testatrix, duly admitted to probate. It was executed in form to pass real estate. The testatrix was the widow of Philo B. Wright, deceased, and

she left surviving her, her mother Mrs. Mary H. Post, and an only child, Harry Post Wright; both of whom have since died.

The clauses of the will of Mrs. Wright, material to the present inquiry, are the following:

"Item. I give and bequeath unto Curtis W. Holcomb, of Linden in the State of Maryland, the sum of five thousand dollars out of my estate, in trust to invest the same in some good and safe security or securities, and to pay the interest and income therefrom, from time to time, as the same shall mature, to my beloved mother Mary H. Post, during her natural life, and upon the death of my said mother, to pay, deliver, assign and convey the said principal sum of five thousand dollars, or the securities or property in which the same may then be invested, to my beloved son Harry Post Wright, his executors, administrators, heirs or assigns.

"Item. I give, devise and bequeath all and singular the rest and residue of my property and estate, real, personal and mixed, and wheresoever situated, of which I may die seized and possessed, to my beloved son Harry Post Wright, and his heirs and assigns forever.  If, however, my said son shall die before he shall have attained the age of twenty-one years, without lawful issue surviving him, then, and in that case, and not otherwise, I give, devise and bequeath unto my mother Mary H. Post, and her heirs and assigns forever, all and singular my said property and estate, real, personal and mixed, and wheresoever situated, *of which my said son may die seized and possessed*, together with said principal sum of five thousand dollars, bequeathed to Curtis W. Holcomb in trust as aforesaid.

"I hereby constitute and appoint said Curtis W. Holcomb the guardian of the person and estate of my said son Harry Post Wright during his minority, it being my wish, however, that my said son be permitted to live with my mother until he shall attain his majority."

Mrs. Mary H. Post, the mother named in the will, died

intestate on the 29th of December, 1888, leaving a son, Frank O. Post, and her grandson Harry Post Wright, her only heirs at law, and distributees of her estate. Harry Post Wright was born in April, 1885, and he died intestate on the 19th of October, 1892, being less than eight years of age. Frank O. Post died testate on the 1st of November, 1892, and by his will, duly admitted to probate, he constituted Holcomb, the plaintiff, his executor, and the guardian of his two minor children.

*Mr. Walter H. Smith* and *Mr. Curtis W. Holcomb* for the appellant Holcomb.

*Mr. Henry E. Davis* and *Mr. Clarence A. Brandenburg* for Irvin B. Wright *et al.*:

1. There can be no valid limitation over where an absolute power of disposition is given to the primary devisee. *Jackson* v. *Bull*, 10 Johns. 19; *Howard* v. *Carusi*, 109 U. S. 725; *Van Horn* v. *Campbell*, 100 N. Y. 293; *Ide* v. *Ide*, 5 Mass. 500. It makes no difference whether this power of disposition is expressly given or necessarily implied; in either event the limitation over is void.

The use of the words "of which my son may die seized and possessed," by necessary implication gives the primary devisee power of disposition. The estate therefore vested absolutely in the first taker, and the limitation over is void. That the use of these words by the testatrix in this case necessarily mean what we assert, the following authorities will show: *Jackson* v. *Bull*, 10 Johns. 19; *Jackson* v. *Robins*, 15 Johns. 169; *Helmer* v. *Shoemaker*, 22 Wend. 137; *Trustee* v. *Kellogg*, 16 N. Y. 83; *Ide* v. *Ide*, 5 Mass. 500; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Melson* v. *Doe*, 4 Leigh, 408; *Riddick* v. *Cohoon*, 4 Rand. 547; *Pickering* v. *Langdon*, 22 Me. 413; *Atty. General* v. *Hall*, Fitzg. 314; *Flanders* v. *Clarke*, 1 Ves. Sr. 9; *Brown* v. *Dean*, 10 Mass. 438; *Jones* v. *Bacon*, 68 Me. 34; *Flynn* v. *Davis*, 18 Ala. 132; *Ramsdell* v. *Ramsdell*, 21 Me. 288; *Burbank* v. *Whitney*, 24 Pick. 151; *Harris* v.

*Knapp*, 21 Pick. 416; *Annin* v. *Van Doren*, 14 N. J. Eq. 135; *Kelly* v. *Meins*, 135 Mass. 231; *McKenzie's Appeal*, 41 Conn. 607; *McDonald* v. *Walgrove*, 1 Sandf. Ch. 274; *Leggett* v. *Firth*, 132 N. Y. 12; *Hermanee* v. *Mead*, 18 Abb. N. C. 90; *Van Horne* v. *Campbell*, 100 N. Y. 287; *Howard* v. *Carusi*, 109 U. S. 725.

2. The proposition that the intent of the testator is to be gained, not only from the will itself, but from the circumstances surrounding him at the time it was made, applies only where the intention is not clearly expressed. The intent of the testatrix in this case is not involved in the slightest doubt. Clearly it was to vest the estate absolutely in her son, with full power of disposition of all or any part of it, with a limitation over of whatever should remain upon his death under age and without issue. There is no difficulty in ascertaining the intent from the will itself, but when revealed it countervails a well-known policy of the law, and the limitation over is void.

To hold otherwise would be to cut down the estate granted to the first devisee to a devise of the use of the property merely, which would be in violation of a well-known principle of law. Where a testator uses apt words expressive of a clear intent to vest an absolute estate the presumption of the law is, and the law so declares, that an absolute estate vests with the usual concomitants. An estate granted with words indicative or expressive of the gift of a fee-simple superadded is cut down to a lesser estate only where restrictive words are added. *Annin* v. *Van Doren*, 14 N. J. Eq. 135; *Armstrong* v. *Kent*, 21 N. J. L. 518. There are no restrictive words in this will. The words " of which he shall die seized and possessed " must be absolutely rejected in order to sustain the devise over. This cannot be done. *Simms* v. *Doughty*, 5 Ves. 247.

The use of the word *assigns* in the devise to her son is an express declaration by the testatrix that the estate should go to the son and " those to whom the property may be transferred," which is the legal definition of assigns.

The assumption that an absolute power of disposition could not be exercised by the son until he came of age, is clearly erroneous. The deed of an infant, though voidable, is not necessarily void. *Irvine* v. *Irvine,* 9 Wall. 617. Moreover, the law makes provision for disposing of the estate of an infant for certain purposes.

3. Where a will directs the real estate of the testator to be sold, such direction operates as an equitable conversion, although it is provided that certain of the real estate shall not be sold so long as it is profitable to retain it. *Robinson* v. *Robinson,* 19 Beav. 494.

4. The limitation over is void because dependent upon the double contingency, first, of the death of the primary devisee under age and without issue, and, second in the lifetime of the second devisee.

The use of the word "heirs" in the devise over was merely descriptive of the estate the devisee was to take, and the testatrix had in mind no particular individuals as heirs of the devisee. The word "heirs" in the devise over is therefore a word of limitation and not of purchase, and the devisee having died in the lifetime of the primary devisee, the devise over failed to take effect. *Daly's Lessee* v. *James,* 8 Wheat. 496.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

In construing the will of Mrs. Wright, the auditor arrived at the conclusion that, by force of the terms employed in the devise over to the mother, upon the event of the death of the son before he attained the age of twenty-one years, without lawful issue surviving him, such devise over was defeated, and the devise and bequest to the son stood as if there had been no such devise over; that the words, "of which my said son may die seized and possessed," operated to invest the son, by necessary implication, with an absolute power of disposition of the estate devised and bequeathed,

and was therefore inconsistent with and repugnant to the estate attempted to be devised over to the mother. The court below came to a different conclusion, and held that such was not the operation of the terms quoted, and that the devise over to the mother was good and effectual. And in this conclusion, we fully concur with the court below. We do not, however, agree with the court below as to the distribution of the personal estate as directed by the decree.

The principle stated and maintained by the auditor, upon the authorities cited by him, would seem to be well established; but we do not think the principle applies to this case. The case upon which the greatest reliance is placed, is that of *Howard* v. *Carusi*, 109 U. S. 725. Without at all questioning the correctness of the decision in that case, we do not think it an authority to control the decision of this case. The provisions of the will in that case were quite different from the devise in the will before us. In that case, the will was, as stated by the court, that the brother, S. C., should have a fee simple estate, coupled with the expression of a hope and trust that he would not unnecessarily diminish the estate; and then is given to the nieces of the testator *so much of the estate as S. C. shall not at his death have disposed of by sale or devise*. Of this devise the Supreme Court said: "We have then, devised to Samuel Carusi an estate in fee simple, *with an absolute power of disposition, either by sale or devise, clearly and unmistakably implied*. Therefore, according to the adjudged cases, the limitation over to the nieces of the testator is void." In a case so plain as that stated by the court, of course there could be no doubt of the application of the principle. For, as the court proceeds to state: "The rule is well established that, although generally an estate may be devised to one in fee simple or fee tail, with a limitation over by way of an executory devise, yet when the will *shows a clear purpose* of the testator to give an absolute power of disposition to the first taker, the limitation over is void." There are many authorities

cited in the course of the opinion, and the substance and result of them stated; but we do not understand that it was the intention of the court to announce any doctrine or principle more comprehensive than was required by the case before it. There are numerous cases upon the subject, and there seems to be great want of harmony among them.

In construing a will the intention of the testator is paramount, and must be given effect, unless that intention is clearly in conflict with some well settled rule of law. The first and great principle in the exposition of wills, says Chief Justice Marshall, in *Smith* v. *Bell*, 6 Pet. 68, to which all rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. The will is defined to be " the legal declarations of a man's intentions which he wills to be performed after his death." These intentions are to be collected from his words; and ought to be carried into effect if they be consistent with law. In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view; and where there are two intents, inconsistent with each other, that which is primary will control that which is secondary.

The case just referred to, of *Smith* v. *Bell*, would seem to have a strong application to this case in principle and by analogy. In that case the will contained this clause: "Also I give to my wife E. G., all my personal estate whatsoever and wheresoever, and of what nature, kind and quality soever, after payment of my debts, legacies and funeral expenses, which personal estate I give and bequeath unto my said wife E. G., to and for her own use and disposal absolutely; the remainder after her decease to be for the use of the said I. G.," the son of the testator. On the construction of this will, it was held that I. G., the son, took a vested remainder in the personal estate, which came into possession after the death of E. G., the wife. The conclusion reached was based upon what

was regarded as the clearly expressed intention of the testator, that the estate should go over to the son after the death of the wife, notwithstanding the strong terms in which the power of disposal was declared to be in the wife, the first legatee.

In the case now before us, it is clear beyond doubt, that Mrs. Wright, the testatrix, intended to provide for her mother, and she intended her property to pass to her mother in the event of her son dying under the age of twenty-one years, without issue. This was reasonable; indeed, nothing more natural, and according to duty and filial affection. She could never have contemplated, in the devise made to the son, that he would alienate or attempt to alienate the property during the period of his minority; and there are no terms employed that necessarily give rise to the presumption that she did so contemplate. On the contrary, the presumptions are all the other way. She must be taken to have known that by the statute law her son would be wholly unable to make a valid will to pass real estate, during his minority; and as it is claimed that it is by virtue of an implied power of disposition of the property that the devise over is defeated, it must likewise be supposed that the testatrix was advised of the fact of the incapacity of her son to execute such power before attaining the age of twenty-one years. In 1 Sugd. on Pow. 211, it is said that an infant, like a *feme covert*, may at common law do any act where he is a mere instrument or conduit pipe, and his interest is not concerned; and upon this principle, it would seem to follow that an infant may execute a power simply collateral, deriving its effect from the Statute of Uses. And the author submits, upon the authorities cited by him, that an infant cannot execute a power over *real estate* unless it be a power simply collateral; but as to personalty, clearly he may exercise a power over that at the age at which, by law, he may dispose of personalty to which he is absolutely entitled. And so in 4 Kent. Com. 324, the author says: "Every person capable of

disposing of an estate actually vested in himself may exercise a power, or direct a conveyance of the land. The rule goes further, and even allows an infant to execute a power *simply collateral, and that only.*" See also the case of *Hearle* v. *Greenbank,* 3 Atk. 695, and the opinion of Lord Hardwicke. Clearly, the power in this case, claimed to have been raised by implication, was not a power *simply collateral,* if a power at all. A power simply collateral is one without interest; and no such power as that in the son could be implied here. But apart from this are the words employed in the devise sufficient to raise any kind of power by implication? The words of the devise are, " I give, devise and bequeath unto my mother Mary H. Post, and her heirs and assigns forever," upon the contingency previously designated, " all and singular my said property and estate, real, personal and mixed, and wheresoever situated, *of which my said son may die seized and possessed,* together with said principal sum of five thousand dollars bequeathed to Curtis W. Holcomb in trust as aforesaid.

It is clear, we think, that these words, " of which my said son may die seized and possessed," were never designed to raise a power in the infant son, nor were they used in any such connection, but were used as merely descriptive of the condition of one part of the estate devised, as distinguished from the part that was in the hands of Holcomb as trustee; or, it may be, that it was supposed that the property might be changed or increased before the happening of the contingency upon which the devise over was to take effect. We are clearly of opinion that the devise and bequest over to the mother of the testatrix were good, and that it would do great violence to the clear intention of the testatrix to hold otherwise. And such devise and bequest over carried not only the real estate as such, but the principal fund of $5,000 in the hands of the trustee, and also the sum of $6,714.18, and the sum of $2,470, derived from the sale of certain real estate belonging to the estate of Mrs. Wright, the testatrix, at the time of her death.

There is a question made as to the character of the property represented by these two latter sums,—whether they should be treated as realty or as personalty. They were derived from real property sold after the death of Mrs. Wright, and have since been treated as personalty. And with respect to the first of these sums, that of $6,714.18, it appears to have been derived from the sale of certain real estate, situate in the District of Columbia, devised to be sold by the will of Mrs. Mary J. Wright, deceased; and the sale was decreed to be made by virtue of the will, and the sale was made under that decree, and finally ratified; and we must suppose that the sale was properly made, and the realty converted into personalty. In this latter character it became a part of the estate devised and bequeathed to Mrs. Mary H. Post, under the executory limitation to her. And so in respect to the second sum mentioned, that of $2,470. That was derived from the sale of certain real estate in West Virginia, in which the testatrix was interested—whether jointly or severally does not appear; nor does it appear by what authority it was sold. But we must assume, in the absence of anything to the contrary, that it was sold by some proper authority; and that being so, the conversion from realty to personalty was perfected, and in that character it was operated upon by the will of Mrs. Wright, and passed under the executory limitation to Mrs. Post, the mother, and become a part of the estate of the latter. The acts of Congress, in force in this District, which were referred to and relied upon in the argument for the plaintiff, have no effect as applied to the conversion of the real estate situate in the State of West Virginia. The question of sale and conversion of real estate, situate in any of the States of the Union, must depend upon the law of such State, and not upon the law of another jurisdiction. The money, the proceeds of sale, having been brought into this jurisdiction and treated here as money, must be taken as having the quality and attributes of personal property. Therefore,

both the sums, the one of $6,714.18, and the other of $2,470, are to be treated as personalty.

It would seem to be according to a well settled principle, that though the mother, the executory devisee and legatee, died before the son of the testatrix, the first devisee, at common law, the executory devise and bequest were transmissible to the heirs and personal representatives of the mother, the executory devisee and legatee, notwithstanding her death before the contingency happened. *Barnitz's Lessee* v. *Casey*, 7 Cr. 456. And so it is laid down in Fearne, Con. R. & Ex. Dev. 364, that contingent interests pass to the real or personal representatives, according to the nature of such interests, as well as vested interests, so as to entitle such representatives to them when the contingencies happen. And again, at page 559, the author, stating the case of *King* v. *Withers*, Cas. Temp. Talb. 117, lays it down, that where the testator devised lands to his son B, but if he should die without issue male of his body then living, or which might be afterwards born, then his daughter should receive at her age of twenty-one, or day of marriage, which should first happen, the sum of £3,500; but in case the contingency of his said son's dying should not happen before his daughter's said age or day of marriage, that then she should receive that sum whenever such contingency might happen, and charged the said legacy or portion on the real estate. The daughter married, having attained her age of twenty-one, and died in the lifetime of her brother B, who afterwards died without issue male. Lord Chancellor Talbott decreed, that the legacy should be raised, for the benefit of the administrator (the husband) of the daughter; and he held, that though it did not absolutely vest, because it might never arise, yet it so far vested as to be transmissible to the representative. This decree was afterwards affirmed in the House of Lords on appeal, and the case has ever since been regarded as a leading authority, and is one of the cases referred to in the case of *Barnitz's Lessee* v. *Casey, supra*.

The executory devise and bequest over to Mrs. Post being good, and she having predeceased her grandson, Harry Post Wright, the first devisee and legatee, and the interest she acquired being transmissible, the next question is, who are or were the real and personal representatives of the executory devisee and legatee entitled to take under her?

At the death of Mrs. Post, the executory devisee, she left two heirs at law surviving her; her son, Frank O. Post, and her grandson, Harry Post Wright. And though the contingent estate, so far as the realty was concerned, devolved upon these two heirs at law, upon the death of Mrs. Post, yet, inasmuch as the estate did not vest absolutely until the happening of the contingency upon which it depended, and that contingency was the death of Harry Post Wright under twenty-one years of age without issue, with the happening of that event the entire estate in the realty devolved upon and became vested in Frank O. Post, the only remaining heir of the executory devisee, Mrs. Mary H. Post. This is the principle laid down by the Supreme Court in the case of *Barnitz's Lessee* v. *Casey*, 7 Cr. 456, a case arising under the Maryland Act to Direct Descents of 1786, Ch. 45, and in force in this District, though the statute was held not to embrace the particular devise, and the descent was according to the common law. In that case the devise was to A in fee, and if he should die under the age of twenty-one years, and without issue, then to B. That was held to be a good executory devise; and the principle of the transmissibility by descent of such executory estate was stated to be, that if B died before the contingency happened, it devolved upon his heirs, and so from heir to heir until the contingency happened, when it would vest absolutely in him *only* who could then make himself heir to B, the executory devisee. And although A be the heir at law of B, yet the executory devise thus devolving on him would not merge in the precedent estate, but, on the death of A, it devolved to the next heir of B. Here the heir upon whom the whole estate

devolved, upon the death of Harry Post Wright, was Frank O. Post, the only remaining heir of Mrs. Mary H. Post, his mother. And to this effect we understand the decree of the court below, as to the real estate.

But with respect to the personal estate, operated upon by the executory bequest over to Mrs. Post, a different rule applies. And this personal estate includes the $5,000 bequeathed, and the two sums derived from the sales of real estate before mentioned.

The personal property carried over by virtue of the bequest, must be distributed as the personal estate of Mrs. Mary H. Post, the executory legatee, including the $5,000 in the hands of Holcomb, trustee. This is upon the principle settled in the leading case before referred to, of *King* v. *Withers, supra.* For though, at the death of Mrs. Post, the right of property had not absolutely vested, because the contingency might never occur, yet it had so far vested as to be transmissible to the personal representative of the executory legatee. And that being so, the distribution of such personal estate must be made as of the estate of Mrs. Post, the legatee. Who are, then, the distributees of this fund? The inchoate right to distribution accrued upon the death of Mrs. Post to her son Frank O. Post, and her grandson Harry Post Wright, to become absolute on the happening of the contingency contemplated by the will. Under the Statute of Distribution (act of Md. of 1798, Ch. 101, Subch. 11) Frank O. Post would be entitled to one-half, and the other half would be distributable to those representing Harry Post Wright, deceased; the statute by its 13th section providing, that "If any person entitled to distribution shall die before the same be made, his or her share shall go to his or her representatives." In distributing this portion of the fund, it should be divided equally among the uncles of the deceased grandson, whether of the paternal or maternal side, or of both. The statute, by Section 11, provides, that "After children, descendants, father, mother, brothers

and sisters, of the deceased, and their descendants, *all collateral relations, in equal degree,* shall take, and no representation among such collaterals shall be allowed; and there shall be no distinction between the whole and half blood."

It follows from the view we have taken of this case, as presented on the two appeals or cross appeals before us, that *the decree appealed from must be affirmed in part, and reversed in part; and we shall remand the cause that a decree may be entered therein by the court below in conformity with the foregoing opinion of this court; the costs of said appeals to this court to be paid out of the personal estate or fund involved; and it is so ordered.*

*Decree affirmed in part, and reversed in part, and cause remanded.*