## AMERICAN SECURITY & TRUST CO. v. SULLIVAN et al.

### No. 29602.

District Court of the United States for the District of Columbia.

July 28, 1947.

**CURRAN, Associate Justice.**

This is an action brought by the American Security and Trust Company, a corporation created by and existing under the laws of the District of Columbia, and doing business in said District, as Trustee under the Will of Thomas C. Sullivan, deceased, to have the will construed and to obtain the Court's instructions with respect to the proper distribution of the trust estate created by said will.

The following defendants are sued as nephews and nieces of Thomas C. Sullivan, deceased, all of whom were named as distributees who survived the life beneficiary, Anna J. Stith:

Defendant # 1—Walter S. Sullivan
Defendant # 6—Edith M. Sullivan Roeser
Defendant # 8—Elizabeth Sullivan Miller
Defendant #15—Estelle Sullivan Zeibold
Defendant #16—Earl Sullivan
Defendant #17—Walter Sullivan
Defendant #18—Charles P. Sullivan
Defendant #19—Clara Sullivan Davidson
Defendant #20—Edna Sullivan Messick
Defendant #21—Ruth Sullivan Fetterhoff
Defendant #22—Nellie Sullivan (Elicker) Ankay
Defendant #23—Anna Myrtle Sullivan (Burkit) Hetzler
Defendant #26—Fannie Sullivan Alderson
Defendant #31—Edna MacFadden Smith
Defendant #33—Paul Freeman Oakes

The complaint alleges that the following named defendants are sued in their hereinafter described capacities:

Charles Sullivan, who was a nephew of the said testator, died intestate in 1909 leaving him surviving the following children: Gladys C. White, defendant #2; Mildred C. Hawes, defendant #3 and Warren J. Sullivan, defendant #4.

Samuel M. Sullivan, who was a nephew of the testator, died in 1935 leaving no issue him surviving. Joseph P. Murphy of Denver, Colorado, was appointed his Administrator, but the administration of this estate has been closed and the said Joseph P. Murphy is now deceased, and, therefore, the unknown heirs at law, next of kin, legatees, devisees and alienees of the said

G. B. Craighill, Jr. (of McKenney, Flannery & Craighill), of Washington, D.C., for plaintiff.

Richard L. Merrick, of Washington, D. C., for defendants.

Samuel M. Sullivan are named parties defendant #5.

James Sullivan, nephew of the said testator, died in 1931 and his wife, Amelia L. Sullivan was the duly appointed administratrix of his estate. Said Amelia Sullivan is now deceased and Martha S. Pray, daughter of James Sullivan, is his only issue and is named as defendant #7.

Thomas C. Sullivan, II, nephew of the said testator, predeceased the testator, leaving surviving children Chester T. Sullivan, defendant #9; Anna Sullivan Madden, defendant #10 and Alma Sullivan Hunt, who died leaving surviving her, Paul M. Hunt, her husband, who is named as defendant #11, Paul M. Hunt, Jr., her son, who is named as defendant #12 and Dolores Hunt Doolan, her daughter, who is named defendant #13.

Oliver Sullivan, nephew of the said testator, died intestate in 1937, leaving him surviving, as his only issue, his daughter, Cleo Marguerite Sullivan Rech, who is named defendant #14.

Grace Sullivan Sherman, a niece of the said testator, died in 1935, leaving her surviving, W. T. Sherman, her husband and Administrator of her estate, and who is named as defendant #24; and Howard C. Sherman, her only child, who is named defendant #25.

Walter McFadden, who was a nephew of the testator, died in 1939 leaving him surviving his wife, Margaret S. McFadden, Executrix of his estate and named defendant #27 and #28. Said defendant is sued both as the widow of Walter McFadden as well as Executrix of his estate. Walter McFadden also left him surviving, two daughters: Martha McFadden Woodmansee, who died intestate leaving her surviving her husband, Paul Woodmansee, who is named defendant #29 and the other daughter, Marian McFadden, who is named as defendant #30.

Jean Sullivan Oakes, who was a nephew of the testator, died intestate in 1918 and plaintiff alleges that he left no issue surviving him and, therefore, the unknown heirs at law, next of kin, legatees, devisees and alienees of Jean Sullivan Oakes are named parties defendant #32.

Lawrence Miller, who was a nephew of the testator, died intestate in 1929 leaving no issue him surviving, but was survived by his widow, Elizabeth Sullivan Miller, who is defendant #8. The unknown heirs at law, next of kin, legatees, devisees and alienees of the said Lawrence Miller, deceased, are also named as parties defendant #34.

Clyde Sullivan Emrich, who was a nephew of the testator, died intestate in 1938 leaving him surviving, his widow, Gera D. Emrich, who is named as defendant #35; a daughter Gera Louise Emrich Morgan, who is named defendant #36, and a son, Brooks Emrich, who is named defendant #37.

The unknown heirs at law, next of kin, legatees, devisees, and alienees of Thomas C. Sullivan, deceased, are named as parties defendant #38.

The above described parties defendant are sued, plaintiff alleges, as the only persons, so far as it has been able to discover, who have any claim to or interest in the trust estate created by the Will of the testator, either as beneficiaries described in the will, or as next of kin, if it should be determined that Thomas C. Sullivan died intestate as to any part of his residuary estate.

Thomas C. Sullivan died on or about March 11, 1908, leaving a last will and testament dated December 10, 1907, which was duly admitted to probate and record, as a will of both real and personal property, by order of this Court entered on June 25, 1908, in Administration #15230. By this will, the testator devised and bequeathed his residuary estate to the plaintiff, the American Security & Trust Company, in trust, to pay the net income to his stepdaughter, Anna J. Stith, for life and when the annual net income did not equal $3,000 the plaintiff was instructed to make up the deficiency out of the corpus of the estate. The will then provided:

"Upon the death of my stepdaughter, Anna J. Stith, I direct that the trust herein created shall cease and determine, and that the trust fund and estate remaining in the hands of the trustee hereunder shall

be disposed of in the manner following, viz:

"The trustee hereunder shall make distribution of the same in equal shares to my nephews and nieces, the child or children of anyone or more of said nephews and nieces deceased, taking the parents (sic) share. A list of the names and residences of the nephews and nieces is herewith attached and made a part of this Will."

On the last page of the Will appears the following: "List of names and residences of the nephews and nieces, beneficiaries under the final distribution of the estate of Thomas C. Sullivan" followed by a list of the twenty-five nephews and nieces.

Anna J. Stith, life beneficiary under the trust, died on April 8, 1944, and the plaintiff has made payments of $2,000 each, totalling $30,000, as partial payment of their respective shares, to Defendants Nos. 1, 6, 8, 15, 16, 17, 18, 19, 20, 21, 22, 23, 26, 31 and 33 such numbered defendants constituting those of the named nephews and nieces who survived the life tenant. Plaintiff says that the value of the remainder of the trust estate to be distributed is in excess of $75,000, and has now requested the Court to determine the following questions:

1.) Did each of the nephews and nieces named in the list attached to the Will of Thomas C. Sullivan, deceased, all of whom survived his death, take an absolute and indefeasible remainder interest in said trust estate, immediately upon the death of Thomas C. Sullivan on March 11, 1908 and if so, to whom should the respective shares be paid and in what amounts; or

2.) Did the remainder interest of each of the nephews and nieces named in said list, who died after the death of the testator on March 11, 1908, but before the death of the Life tenant, Anna J. Stith, on April 8, 1944, become divested and if so, to whom should the respective shares be paid (a) where the named nephew or niece died leaving no child or children him or her surviving, and (b) where the named nephew or niece died leaving a child or children him or her surviving.

While some of the defendants are in default, the majority of them answered, admitting the allegations of the complaint, and requesting a proper construction of the Will. One defendant, Warren J. Sullivan, defendant #4, answered requesting (1) an equal share to each of the nephews and nieces now living and (2) and an equal share divided equally between the children of nieces and nephews now deceased.

It is conceded by both sides and admitted in the answers of the defendants that the defendants constitute all possible beneficiaries of the testator. It is further conceded by counsel that no nephews and nieces other than those listed above have ever been born; that fifteen are still alive; that one nephew, Thomas C. Sullivan, II, was deceased at the time the will was executed but was survived by three children, one of whom has died and is survived by her widower and two children; that eight nephews and one niece died after the testator and before the death of the life tenant; that seven of the ten deceased nephews and nieces left surviving children; that two left no children but left surviving spouses, and one left neither child nor spouse; that three of the ten deceased nephews and nieces died testate and seven died intestate, the estates of two of the later having been administered.

The clause in the will describing the final distribution of the residue is somewhat ambiguous, principally because it is incomplete—the principal difficulty being that the testator neglected to provide specifically for the disposition of the share of a nephew or niece who might die without issue.

■ The first rule in the exposition of wills to which all other rules must give way, is that the intention of the testator expressed in this will shall prevail provided it be consistent with the rules of law. Smith v. Bell, 6 Pet. 68, 8 L.Ed. 322; Earnshaw v. Daly, 1 App.D.C. 218; Holcomb v. Wright, 5 App.D.C. 76; Jewell v. Graham, 57 App.D.C. 391, 24 F.2d 257; American Security & Trust Co. v. Blair, 63 App. D.C. 170, 70 F.2d 774; Walker v. Thomas, 64 App.D.C. 148, 75 F.2d 667, 99 A.L.R. 713; Noyes v. Parker, 68 App.D.C. 13,

92 F.2d 562; Evans v. Ockerhausen, 69 App.D.C. 285, 100 F.2d 695, 128 A.L.R. 177, certiorari denied 2 cases 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034; Young v. Munsey Trust Co., 72 App.D.C. 73, 111 F.2d 514; Greenwood v. Page, 78 U.S.App.D.C. 166, 138 F.2d 921; Colton v. Colton, 127 U.S. 300, 8 S.Ct. 1164, 32 L.Ed. 138; Kenaday v. Sinnott, 179 U.S. 606, 21 S.Ct. 233, 45 L.Ed. 339; Buchanan v. National Savings & Trust Co., 79 U.S.App.D.C. 278, 146 F.2d 13.

■■■ It is elementary that the primary source of determining a testator's intention is the will itself. The Court is limited to the language of the will to ascertain the intention of the testator and if that intention is clearly deducible from the terms used, taking the whole will together, then the Court is bound to give that construction which will effectuate and not defeat it. Young Women's Christian Home v. French, 187 U.S. 401; 23 S.Ct. 184, 47 L.Ed. 233; see also Presbrey v. Simpson, 53 App.D.C. 358, 290 F. 333.

Considering the will here involved as a whole, it is clear that the desire of the testator, who had no children of his own, was to provide for the welfare of his step-daughter during her lifetime and upon her death to make distribution of whatever remained of his estate, in equal shares, to his nephews and nieces, or to the child or children of any deceased nephew or niece. This purpose is definitely shown by the provisions of the will itself and by the list attached thereto naming the twenty-five nephews and nieces he desired to share in the residue of his estate, all of whom, except one, were living when the will was executed. To provide for the disposition of the share of the nephew then deceased, whom the testator named in the list as if living, and the children of any deceased nephew or niece, he inserted the provision that "the child or children of any one or more of said nephews and nieces deceased taking the parents (sic) share." The testator therefore intended to treat all his nephews and nieces alike. No provision was inserted in the will as to who should receive the share of a niece or nephew who might die without leaving a child or children.

At the outset the question arises whether the twenty-five remainder shares became vested at the death of the testator or were contingent upon the death of the life tenant. If each of the shares became vested immediately upon the death of the testator, two distinct situations are presented with reference to the shares of the nine nephews and one niece who predeceased the life tenant, viz: (I) where no child was ever born to the nephew or niece, and (II) where a child or children were born.

In the first situation, of which three instances exist, should the estate of the deceased nephew or niece receive the share? In the second situation, of which seven instances exist, two questions present themselves: (a) Did the vested share of a nephew or niece become divested upon the death of the parent before final distribution; or (b) once vested, at the death of the testator, could the share of the nephew or niece ever be divested upon the birth of a child?

Upon a careful examination of the cases, this Court is of the opinion that the remainder interests involved should be considered as vested at the death of the testator and not contingent. The weight of authority supports the proposition that such remainders as described in the Sullivan will became vested in interest immediately upon the death of the testator.

Section 812 of Title 45 of the D.C.Code provides as follows: "A future estate is vested when there is a person in being who would have an immediate right to the possession of the land upon the expiration of the intermediate or precedent estate, or upon the arrival of a certain period or event when it is to commence in possession. It is contingent when the person to whom or the event upon which it is limited to take effect in possession or become a vested estate is uncertain."

■ The fact that the testator's estate at the time of the making of his will consisted of both real and personal property is immaterial because a remainder interest may be created in personalty as well as in realty. The rule is the same in both cases. Vogt v. Vogt, 26 App.D.C. 46, citing Gibbens v. Gibbens, 140 Mass. 102, 3 N.E. 1,

54 Am.Rep. 453. It is clear to the Court that the testator intended to create vested remainders, for there were persons in being who would have an immediate right of possession upon the termination of the intermediate or precedent estate of Anna J. Stith, the life tenant,—these persons being the living nephews and nieces of the testator and the living children of one deceased nephew; and, upon the death of the life tenant the right of enjoyment became absolute.

■ Where the remainder is given to persons named, there being no clause of survivorship, the fact that a construction of the will which will render the remainder contingent may produce an intestacy as to the share of any such persons who may die without issue during the continuance of the precedent estate, is a consideration which will influence a Court to regard the remainder as a vested one. Northern Trust Co. v. Wheaton, 249 Ill. 606, 94 N.E. 980, 34 L.R.A.,N.S., 1150; Roberts v Roberts, 102 Md. 131, 62 A. 161, 1 L.R.A.,N.S., 782, 111 Am.St.Rep 344, 5 Ann.Cas. 805.

■ It has long been the law that estates shall be held to vest at the earliest possible moment unless there is a clear manifestation of the intention of the testator to the contrary, and, that the law will not consider a remainder to be contingent when it can be held to be vested. O'Brien v. Dougherty, 1 App.D.C. 148; Craig v. Rowland, 10 App.D.C. 402; Fields v. Gwynn, 19 App.D.C. 99; and Green v. Gordon, 38 App.D.C. 443.

■ In the case of Doe, Lessee of Poor, v. Considine, 6 Wall. 458, 18 L.Ed. 869, the Supreme Court stated the general rule regarding the determination of the time of vesting in interest as follows:

"A remainder is never held to be contingent when, consistently with the intention, it can be held to be vested.

" * * * where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainder-

man is in esse and ascertained; provided, nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession."

In the case of McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 660, 28 L.Ed. 1015, the same principle is expressed, as follows: "For many reasons, not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience require that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event."

In that case the Court held that all remaindermen had vested remainders and that the remainders were subject to be divested only as to remaindermen dying before distribution leaving children. Those dying without issue were not divested of their interest.

In the case of Johnson v. Washington Loan & Trust Co., 33 App.D.C. 242, affirmed 224 U.S. 224, 32 S.Ct. 421, 56 L.Ed. 741, the construction of the following portion of a Will was in issue: "It is my will and desire that my said homestead shall be kept and continued as the home and residence of my daughters so long as they shall remain single and unmarried. I therefor first after the death of my wife will and devise the said estate to my said daughters, being single and unmarried, and to the survivor and survivors of them so long as they shall be and remain single and unmarried, and on the death or marriage of the last of them, then I direct that the said estate shall be sold by my executors, and the proceeds thereof be distributed by my said executors among my daughters living at my death, and their children and descendants (per stripes) * * *".

The court recited the principles that: (1) the law will not construe a remainder to be contingent when it can be taken to

be vested; (2) estates shall be held to vest at the earliest possible period unless there is a clear manifestation of the intention of the testator to the contrary; (3) adverbs of time, as "where", "there", "after", "from", etc., in a devise of a remainder, are construed to relate merely to the time of the enjoyment of the estate, and not the time of vesting in interest. The Court then held that the daughters living at the time of the death of the testator took vested remainders, rather than that the remainders to the class were contingent and not vested until the time of death or marriage of the last unmarried daughter.

■ Examination of the will in the case here under consideration leads to the conclusion that each nephew and niece named in the list attached to the will, who survived the testator took a vested remainder interest upon the death of the testator, the enjoyment of which was postponed until the death of the life tenant.

Having concluded that each remainder interest became vested on the death of the testator, the question now arises whether or not these vested remainders are subject to divestiture (1) upon the death of a nephew or niece leaving children and (2) upon the death of a nephew or niece without issue.

■ The effect of a provision accompanying the gift of a remainder, that the children of a deceased remainderman shall take the share that the parents would have taken, differs among courts and under varying circumstances. The provision that the children of a deceased remainderman shall take their parent's share is generally held not to be sufficient to prevent the remainder from being vested. Roberts v. Roberts, supra; Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947; Byrnes v. Stilwell, 103 N.Y. 453, 9 N.E. 241, 57 Am.Rep. 760; Rutledge v. Fishburne, 66 S.C. 155, 44 S.E. 564, 97 Am.St.Rep. 757. See also Redman v. Hubbard, 140 Ky. 71, 130 S.W. 955, 37 L.R.A.,N.S., 728; and Gibbens v. Gibbens, supra. While in some cases courts hold remainders subject to the direction that children of a deceased remainderman shall take their parent's share vested without any particular discussion as to whether or not the remainder was subject to be divested, in other cases the remainder given by a will containing a direction that the children of a deceased remainderman should take their parent's share has been held vested, not subject to be divested. Johnson v. Washington Loan & Trust Co., supra; Johnes v. Beers, 57 Conn. 295, 18 A. 100, 14 Am.St.Rep. 101; Northern Trust Co. v. Wheaton, supra; Atchison v. Francis, 182 Iowa 37, 165 N.W. 587, L.R.A.1918E, 1087; Roberts v. Roberts, supra.

The remainder given by a will containing a direction that the children of a deceased remainderman shall take their parent's share has been held in some cases subject to be divested. Crawley v. Kendrick, 122 Ga. 183, 50 S.E. 41, 2 Ann.Cas. 643; Gardner v. Vanlandingham, supra.

The vested interest taken by the remainderman has been held, in other cases, to be divested by death alone, either with or without issue, there being in many cases a gift over in case of death without issue. Mercantile Bank v. Ballard, 83 Ky. 481, 4 Am. St.Rep. 160; Jacobs v. Whitney, 205 Mass. 477, 91 N.E. 1009, 18 Ann.Cas. 576.

■ The greater number of decisions and the better view seem to proceed on the theory that divestiture occurs only on death leaving issue and that there is no divestiture by death alone without issue. McArthur v. Scott, supra; Plitt v. Pepplers (Plitt v. Plitt), 167 Md. 252, 173 A. 35, 36, 109 A.L.R. 1; Jacobs v. Whitney, supra; Rutledge v. Fishburne, supra; holding that under a will by which testatrix devised property to her daughter for life, "with remainder to her children share and share alike, the child or children of deceased child to represent and take the parent's share", a child of the daughter who was in esse at the death of the testatrix took a vested transmissible interest in the remainder, which, upon her death leaving no children, would descend to her heirs generally; but that if she should die leaving children at the time of her death, they would take by substitution or executory devise, the interest which she otherwise would have taken.

In the Plitt case, supra, the clause provided that "the children of any deceased child or children to take the share to which their

parent or parents would have been entitled, if living". The Court noted the absence of a provision disposing of the interests of remaindermen who might die without issues prior to the time of distribution and held that the vested remainders properly passed under the will of a daughter who predeceased the life tenant leaving no issue, saying: " * * * In providing that in the division of the estate in remainder the children of any deceased child of the testator should take the share to which the parent would have been entitled, if living, the will does not reveal a purpose incompatible with the original vesting, in the parent, of the share thus made subject to later divestiture in the event specified. The effect of that provision was simply to render a devised estate defeasible at a subsequent period if the prescribed conditions of defeasance should occur. Neither in the terms of the residuary clause nor in the context of the will do we find any terms which manifest a design that the vesting in interest of the shares devised and bequeathed by the testator to his children should not be effective at his death but should be postponed to the time when they would be entitled to receive their shares in possession. There is consequently no adequate ground for declining to gratify in this case the preference of the law for the earliest vesting of which the will under interpretation reasonably admits."

In the recent case of Pyne v. Pyne, decided by the U.S. Court of Appeals for the District of Columbia, 154 F.2d 297, 304, the testatrix devised realty to her sister for life, then to her daughter for life and then to testatrix's three sons and the issue of the daughter, if any, in fee simple, the issue to take a one-fourth part and if the daughter should die without issue, then to the three sons, their heirs and assigns forever, share and share alike, and, in any case, if the three sons should die leaving a descendant or descendants, the descendant or descendants to take the share his, her or their parent would have taken if living, as to three-fourths of the property on the death of the testatrix. The Court, after exhaustive citation of authorities, held "that upon the death of the testatrix, each designated remainderman took a vested remainder in fee simple subject to be divested in the event of his death, leaving a descendant, prior to the death of the life tenant; that upon the event of divestment, the substituted remainderman took the remainder."

The plain meaning of the language of the Sullivan will is that the children shall take the share of a deceased parent who has predeceased the life tenant and the Court is, therefore, of the opinion that those nephews and nieces who died leaving children were divested of their remainder interest and the children were substituted in interest.

As to the nephews and nieces who died after the testator and before the death of the life tenant, leaving no children, the Court is of the opinion that there was no divestiture and their share should go to the estate of the deceased nephew or niece. McArthur v. Scott, supra. In the case of Gibbens v. Gibbens, supra, the residuary clause therein stated: "At the decease of my wife all my estate, real and personal, shall go to and be equally divided among my children; the issue of a deceased child standing in the place of a parent". One daughter, Harriet, died childless before the life tenant's death. The Court held that her share had vested, saying: "The will does not say that the estate shall go to his children then surviving, or make any provision that the interest of any one of them shall cease in case of his or her death", but neither does the Sullivan will provide that the estate shall go to his nephews and nieces then surviving, nor is there any provision that the interests of anyone of them shall cease in case of their death without issue. Vested remainders will not be divested by implication—express language in the will must definitely provide for divestiture. There are, of course, many instances where express language is used. Illustrations of the express language comprising "survivorship" or "gift over" clauses are numerous. See Britton v. Thornton, 112 U.S. 526, 5 S.Ct. 291, 292, 28 L.Ed. 816, where the testator provided that if the granddaughter should "die in her minority, and without lawful issue then living, the land hereby devised shall revert and become a part of the residue of my estate."

In the instant case there is no "survivorship" or "gift over" clause in case a remainderman should die without issue. To hold that a share of a nephew or niece who died without issue is to be divested, would result in that share not going to the survivors, but that the testator died intestate as to that share. It is well recognized that the Courts will not presume that a testator intended to provide for an intestacy in his will where a testamentary scheme can be logically deduced. Here the testator knew that one of his nephews had already died leaving three children; he undoubtedly realized that before the death of the life tenant some of his nephews and nieces might die leaving children and it certainly was not outside the realm of possibility that he also realized that before the death of the life tenant some of his nephews and nieces might die childless. Under these circumstances, it cannot be said that the testator died intestate as to any part of his residuary estate.

 Under the provisions of the Sullivan will, there is no way in which a child of a child of a deceased nephew or niece could receive any interest in the estate because, in this jurisdiction, the words "child" or "children" in a will are construed to include only immediate offspring and not "issue" or "descendants" unless the context of the will shows that the testator's intention is clearly and obviously otherwise. Rodler v. Union Trust Co., 73 App.D.C. 350, 119 F.2d 454. In that case the Court said: "It is settled that the word "children" used in a Will to express kinship, includes only immediate offspring unless there is evidence that the testator intended a broader sense." Citing Allen v. Reed, 57 App. D.C. 78, 17 F.2d 666; Billingsley v. Bradley, 166 Md. 412, 171 A. 351, 104 A.L.R. 274; In re Schaufele's Will, 252 N.Y. 65, 168 N.E. 831; Bushman v. Fraser, 322 Ill. 579, 153 N.E. 611.

 Of the seven of the ten deceased nephews and nieces leaving surviving children, two died leaving two or more children, one of whom subsequently died before the death of the life tenant. This Court, having decided that the proportionate share of each deceased child has vested, it

follows that his or her estate should take the same equal share as the surviving child or children should take, as provided in Section 816 of Title 45 of the D.C.Code, as follows: "Every estate granted or devised to two or more persons in their own right, including estates created or devised to husband and wife, shall be a tenancy in common, unless expressly declared to be a joint tenancy * * *." Prior to the enactment by the Congress of the United States of the Code of Laws for the District of Columbia, which took effect on January 1, 1902, there was in force in the District of Columbia a common law rule that a conveyance or devise to two or more persons, whether as a class or by name, without sufficient indication in the instrument of intention that they were to hold in severalty, should be construed as creating a joint tenancy and not a tenancy in common. Noyes v. Parker, 68 App.D.C. 13, 92 F.2d 562. Therefore, had the trust estate under the Sullivan will been created prior to January 1, 1902, the common law would have given the deceased child's share to the survivor or survivors of the children, but under the Code provision enacted in 1902, above quoted, the children take as tenants in common.

The Court concludes, therefore, (1) that divestiture occurs only on death leaving issue and that there is no divestiture by death alone without issue; that (a) where remaindermen died leaving children, the remainder interests are divested and their children are substituted in interest, and (b) where remaindermen died without children, their interests are not subject to divestiture but pass to their respective estates; and (2) where a child of a deceased nephew or niece has died, the estate of that child is entitled to its proportionate share.

Under this scheme of distribution, (a) the fifteen living nephews and nieces of the testator are each entitled to one-twenty-fifth ($\frac{1}{25}$th) share of the residuary estate; (b) the children of seven deceased nephews and nieces are entitled to their respective parent's shares; and (c) the estates of three deceased nephews and nieces, who died without children, are each entitled to one-twenty-fifth ($\frac{1}{25}$th) share of the residuary estate.

While counsel for both sides concede and the defendants answering admit that the above-described defendants constitute all possible beneficiaries under the will of the testator, nevertheless, no evidence having been offered on this point, the Court will refer this matter to the Auditor to determine factually the proper persons and the correct amount each shall receive from the said trust estate pursuant to the scheme of distribution as heretofore set forth and to determine the amount of the fee to be allowed the plaintiff, as trustee, upon final distribution, and the fee to be allowed its counsel of record for legal services rendered.

Counsel for plaintiff will prepare the appropriate orders consistent with this opinion.