# YOUNG WOMEN'S CHRISTIAN HOME *v.* FRENCH.

# FAUL *v.* FRENCH.

APPEALS FROM THE COURT OF APPEALS OF THE DISTRICT OF
COLUMBIA.

Nos. 73, 74. Argued November 5, 6, 1902.—Decided January 5, 1903.

By her last will and testament Mrs. Sophia Rhodes provided for her husband by securing to him the income from one half her estate, subject to which the whole was devised and bequeathed to her only son; in the event of her son's predecease, the entire estate to trustees in trust for the husband for life, and on his death to the Young Women's Christian Home; in the event testatrix survived husband and son, then to the Home. The mother and son survived the husband, and perished in a shipwreck, going down together. The estate was claimed by the next of kin of Mrs. Rhodes; by the next of kin of the son; and by the Young Women's Christian Home. *Held :*

(1) That there is no presumption of survivorship in the case of those who perish by a common disaster, in the absence of proof tending to show the order in which dissolution took place ; and, actual survivorship being unascertainable, descent and distribution take the same course as if the deaths had been simultaneous.

(2) Whether by a particular will a condition precedent, a condition subsequent, or a conditional limitation is imposed, is, in the absence of unmistakable language, matter of construction, arrived at in view of the familiar rules that the intention of the testator must prevail, and that intestacy should be prevented, if legally possible.

(3) As the state of facts at the time of Mrs. Rhodes' death did not substantially differ from what the will showed she contemplated when

it was executed, the interpolation of some phrase covering the contingency of inability to ascertain survivorship is unnecessary, and her intention as sufficiently declared on the whole will may be carried into effect.

(4) The use of the words, "if she survived," instead of the words, "if they did not survive," is not material, and, on principle, the estate of Mrs. Rhodes should go as directed as if she survived her son, in the absence of proof to the contrary. The property remained where it was vested, there being no evidence that it had been divested.

THESE are appeals from a decree of the Court of Appeals of the District of Columbia on a bill of interpleader exhibited in the Supreme Court of the District by the administrators with the will annexed of the estate of Sophia Rhodes, deceased. At the conclusion of the administration there remained in the hands of the administrators a fund of $14,891.89 for distribution, which was claimed by the Young Women's Christian Home, a corporation of the District of Columbia, created by act of Congress; the next of kin of Sophia Rhodes; and the administrator of the estate of Eugene Rhodes, deceased; and the interpleader was filed to determine the rights of the parties.

The will of Sophia Rhodes was executed at Washington, May 10, 1894, and read as follows:

"In the name of the bountiful Giver of all. Amen.

"I, Sophia Rhodes, of the city of Hutchinson, in the State of Kansas, temporarily residing at Washington, in the District of Columbia, being now of sound and disposing mind and memory, do make, publish and declare this my last will and testament, hereby revoking all former wills or testamentary dispositions of my property.

"I now dispose of the property and estate which it has pleased Almighty God to intrust to me, as follows, viz.:

"*Imprimis.* I will that all my just debts and funeral expenses shall be paid by my executor hereinafter named, out of the first money from my estate that shall come into his hands.

"*Item* 1. I give, devise and bequeath unto my husband Oliver Wheeler Rhodes, during his life one half ($\frac{1}{2}$) of the income from all my properties and estate in the next following item of this last will and testament disposed of, to be paid

over to him from time to time by my executor hereinafter named, who, for this purpose, shall also act as trustee.

"*Item* 2. I now give, devise and bequeath unto my only and beloved son, Eugene Rhodes, all my property, real, personal and mixed, of whatsoever nature, kind or description, including moneys, credits and evidences of indebtedness of which I may be possessed at the time of my death, to be his absolutely, to hold and to dispose of as unto him may seem good and proper, and subject only to the provisions of item 1 of this last will and testament.

"*Item* 3. In the event of the death of my son, Eugene Rhodes, before the decease either of myself or of my husband, I then give, devise and bequeath all my property, everything I own on earth, as follows, viz. :

"1st. I give, devise and bequeath all my pictures and paintings to the Young Women's Christian Home, in the city of Washington, District of Columbia. It is my will that the said pictures and paintings may, so long as the said home shall exist, be the ornaments of the said home, with my name us the giver connected with them during that time.

"2d. All the rest and residue of my property, real, personal and mixed, I give, devise and bequeath to Michael H. Fitch, of Pueblo, Colorado, to have and to hold, in trust nevertheless, to invest the same to the best of his knowledge and experience, and to pay over the rents and profits arising therefrom to my husband, Oliver Wheeler Rhodes, during his, my said husband's life ; and on the death of my said husband to turn over the said property, moneys, etc., with whatsoever accumulation thereon may be existing, to the Young Women's Christian Home, of Washington, in the District of Columbia, to be the property of the said home absolutely.

"*Item* 4. In the event of my becoming the survivor of both my husband, Oliver Wheeler Rhodes, and of my son, Eugene Rhodes, I then give, devise and bequeath all my property, real, personal and mixed, of whatsoever nature, kind or description, to the Young Women's Christian Home, of the city of Washington, in the District of Columbia, to have and to hold the same absolutely and forever, for the good of that institution.

It is my will that my pictures and paintings shall be disposed of in this event as provided in paragraph 1st, of item 3, of this last will and testament.

" *Lastly.* I hereby constitute and appoint my only son, Eugene Rhodes, the sole executor and trustee of this my last will and testament; and it is my will that my said sole executor and trustee shall administer and execute this last will and testament without giving bond therefor."

The facts were stipulated, and may be shortly stated thus: Oliver Wheeler Rhodes died at Washington, January 27, 1895, at which time his wife, Sophia Rhodes, and their only child, Eugene Rhodes, were in Heidelberg, Germany. They sailed for home from Bremen on the steamship Elbe at three o'clock P. M. on Tuesday, January 29, 1895. About half-past five o'clock the next morning the Elbe collided with another steamship, and sank in about twenty minutes after the collision. Mrs. Rhodes was about fifty-two years old, corpulent, and short of breath, and her son was about twenty-three years old, a single man, and rather a good swimmer. His body came up in a fishing net off the coast of Holland some six weeks after the collision, but his mother's body was never recovered. Of the persons who survived the shipwreck, only two had any knowledge of the mother and son at the time of the disaster. One of them saw Mrs. Rhodes come out of her cabin just after the collision with a blanket over her night dress, and some minutes later saw her son. The other saw the mother and son on deck after the collision, the son endeavoring to put a shawl around his mother, and she with her arms thrown around her son's neck. This person was the last to get into the last boat to leave the ship, and, when it had gotten some distance away, the ship went down with a lurch and every one on board was drowned. He testified that " both of these parties died together, and, so far as this affiant was able to learn, after he saw these parties on the deck clasped in an embrace that would never be loosened until after death, no one else saw them."

The Supreme Court of the District held that there was no presumption of survivorship as between the mother and son; that the will manifested an unmistakable desire to guard

against intestacy; and that the intention of Mrs. Rhodes was clearly apparent that if her husband and son should not survive her so as to receive the property, or if it remained under her control at the time of her death, it should go absolutely to the charity she had named, the Young Women's Christian Home; and decreed accordingly. From this decree Barbara Faul and Andrew Wasner, next of kin of Mrs. Rhodes, and John L. French, administrator of Eugene Rhodes, carried the case to the Court of Appeals of the District, which concurred in the view that there was no presumption of survivorship as between the testatrix and her son, but held that the terms of the will "vesting the estate in Eugene Rhodes immediately upon testatrix's death, we agree that it raises a *prima facie* right in the personal representatives of the son, and imposes the burden upon her next of kin of displacing them by proof of his mother's survival;" and that the representatives and next of kin of the son were entitled to the entire fund. The decree was thereupon reversed, and the cause remanded to the court below with a direction to enter a decree in conformity with that conclusion. 18 App. D. C. 9.

*Mr. J. J. Darlington*, with whom was *Mr. John B. Larner* on the brief, for the appellant, the defendant in error, the Young Women's Christian Home:

The facts relied upon by which to uphold his contention that as Eugene Rhodes was younger than his mother, as well as the stronger and a good swimmer he should be presumed to have survived are insufficient under the common law to create any presumption upon which the courts can act; and in the absence of evidence mother and son will be presumed to have died simultaneously; citing English authorities as follows: *Bradshaw* v. *Toumlin*, 2 Dick. 633; *Wright* v. *Samada*, 2 Phill. 261; *S. C.*, 2 Salk. 593; *Satterthwaite* v. *Powell*, 1 Curt. Ecc. Rep. 705; *Durant* v. *Friend*, 5 De G. & Sm. 343; *Barnett* v. *Tugwell*, 31 Beav. 232; *Underwood* v. *Wing*, 19 Beav. 459; *S. C., sub nomine, Wing* v. *Angrave*, 8 H. L. C. 183; *In re Wainwright*, 1 Sw. & Tr. 257; *In re Ewart*, 1 Sw. & Tr. 258; *In re Wheeler*, 31 L. J. P. & M. 40; and

American authorities as follows: *In re Ridgway,* 4 Redf. 226; *Stinde* v. *Goodrich,* 3 Redf. 87; *Newell* v. *Nichols,* 12 Hun, 604, affirmed 75 N. Y. 78; *In re Hall,* 9 Cent. L. J. 281; *Johnson* v. *Merithew,* 80 Maine, 111, 116; *Cowman* v. *Rogers,* 73 Maryland, 403; *Ehle's Estate,* 73 Wisconsin, 445, 459–460; *In re Willbor,* 20 R. I. 126.

Citing also where the testator and beneficiary having perished together, the property was distributed as that of the owner at the time of the common disaster, *Taylor* v. *Diblock,* 2 Phill. Eccl. Rep. 261; *Mason* v. *Mason,* 1 Meriv. 308; *Goods of Murray,* 1 Ecc. Rep. 596; *Doe dem. Knight* v. *Nepean,* 27 E. C. L. 45; and in cases of intestacy, where a similar rule had been followed as to intestate and heir, *Johnson* v. *Merithew,* 80 Maine, 116; *Ehle's Estate,* 73 Wisconsin, 445; *Russell* v. *Hallett,* 23 Kansas, 196–7; *Coye* v. *Leach,* 8 Metc. 375; *Schaub* v. *Griffin,* 84 Maryland, 562, 566; *Satterthwaite* v. *Powell,* 1 Curt. Ecc. Rep. 705; *In re Wilbor,* 20 R. I. 126.

Also citing on other points, *Wollaston* v. *Berkeley,* L. R. 2 Ch. Div. 213; *Scrutton* v. *Patillo,* L. R. 19 Eq. 369; 24 Am. & Eng. Ency. 1027–32. As stated in *Newell* v. *Nichols,* 12 Hun, 604, affirmed 75 N. Y. 78, " when a testator means to dispose of all his property, and uses the words 'if the legatee should not survive,' it is held to mean 'if the preceding legacy should from any cause fail,' " citing *Avelyn* v. *Ward,* 1 Ves. Sr. 419; *Rickman* v. *Morgan,* 2 Brown's Chancery Cases, 396; *Jones* v. *Westcombe,* 1 Eq. Abbt. 245; *Foster* v. *Cooke,* 3 Brown's Ch. 347; *Doo* v. *Brabant,* 3 Bro. C. C. 397; *Taylor* v. *Taylor,* A. & R. 386; *Jackson ex dem. Beach* v. *Durland,* 2 Johns. Cas. 314. The intention is to be carried into effect, where apparent, although expressions must be discarded or modified to effectuate that purpose, and the testator must not be presumed to have died intestate if possible. *Towns* v. *Wentworth,* 11 M. P. C. 520; *Abbott* v. *Middleton,* 7 H. L. Cas. 68; *S. C.,* 21 Beav. 143; *Liston* v. *Jenkins,* 2 W. Va. 62, and cases cited; *Cox* v. *Britt,* 22 Arkansas, and cases cited; *Chapman* v. *Brown,* Burr. 1635, Lord Mansfield; *McKeehan* v. *Wilson,* 53 Penn. St. 74; Redfield on Wills, 454, note 1; Jarman on Wills, 456, 414, Cap. 17; *Anlick* v. *Wallace,* 12 Bush, 531, citing numerous authorities;

*In re Redfern*, 6 Ch. Div. 133; *Doe dem. Leach* v. *Micklem*, 6 East, 486; *Eatherly* v. *Eatherly*, 1 Cold. 461; *Freeman* v. *Freeman*, 8 Vin. Abr. tit. Devise, 51; *Sessoms* v. *Sessoms*, 2 Dev. & B. 453; Perry on Trusts, sec. 724; *Key* v. *Key*, 4 De G. M. & G. 73; *Pearsoll* v. *Simpson*, 15 Ves. 29; *Robison* v. *Portland Orphan Asylum*, 123 U. S. 702; *Smith* v. *Bell*, 6 Pet. 68, 80; *Patch* v. *White*, 117 U. S. 210; *In re Swenson's Est.*, 55 Minnesota, 300; *Yates* v. *Shern*, 84 Minnesota, 165; *Metcalf* v. *Framingham Parish*, 128 Massachusetts, 370, 374; *Finley* v. *King's Lessee*, 3 Pet. 377; also citing and distinguishing *Illinois Land Co.* v. *Bonner*, 75 Illinois, 317; *Gibson* v. *Seymour*, 102 Indiana, 485; *Rupp* v. *Eberly*, 79 Pa. St. 141.

That under the principles of construction governing wills, and especially the principle which subordinates the letter to the plain intention, to be gathered from the testator's standpoint and from the four corners of the instrument, the Young Women's Christian Home is the party intended by the will of Mrs. Rhodes, under the circumstances which have occurred, to receive her estate; and that the principle deducible from the authorities upon the subject is, that, under the English law, the estate of the person so dying is to be administered as though he, as to that estate, was the survivor, and that the estate of Mrs. Rhodes is accordingly to be so administered.

*Mr. A. A. Hoehling, Jr.*, on behalf of Barbara Faul *et al.*, next of kin of the mother, appellants, and whose contentions were opposed to those of the Young Women's Christian Home:

I. It is not permissible under the guise of construction to incorporate distinct provisions into a will, nor to insert therein conditions or contingencies not provided for by the testatrix. Redfield on Wills, vol. 1, 4th ed. par. 33–1, pp. 458–472; Roper on Legacies, vol. 1, p. 750; 2 Roper on Legacies, 1464; 2 Redfield on Wills, 283; *Wing* v. *Underwood*, 4 De G. M. & G. 633, 654; *Wing* v. *Angrave*, 8 H. L. 205; *Illinois Land Co.* v. *Bonner*, 75 Illinois, 317; *Gibson* v. *Seymour*, 102 Indiana, 485; *Rupp* v. *Eberly*, 79 Penn. St. 141.

II. The will of the testatrix does not show an intent that

the Home should receive her entire estate, save only in the event of the substantial survivorship of the son.

III. The authorities cited by counsel for the Home are not in point. *Finley* v. *King's Lessee*, 3 Peters, 346; *Clark* v. *Boorman's Exrs.*, 18 Wall. 493; *Colton* v. *Colton*, 127 U. S. 300; *Lee* v. *Simpson*, 134 U. S. 572; *Robison* v. *Orphan Asylum*, 123 U. S. 702; *Metcalf* v. *Framingham Parish*, 128 Massachusetts, 370, 374, cited and distinguished.

IV. Where two or more persons perish in a common disaster, and the order of their deaths is unascertainable by evidence, there is no legal presumption of survivorship in favor of any such persons, and in such case property rights are disposed of as if death had occurred to all at the same time. Citing cases on brief of other appellant, and *The King* v. *Hay*, 1 Wm. Black. 640; *Murray's Case*, 1 Curteis, 596; *Satterthwaite* v. *Powel*, 1 Curteis, 705. *Silleck* v. *Booth*, Younge & Collyer Ch. Rep. 121; *In re Selwyn*, 3 Hagg. Eccl. Rep. 748, cited and distinguished.

*Mr. J. W. Smith* and *Mr. William Henry Dennis* on behalf of the administrator of Eugene Rhodes, the son, appellee:

In whatever way the matter may be reasoned out, whether by choosing among the three contingencies possible—that the mother, the son, or neither, survived the other—or by passing those contingencies by as unascertainable and seeking ground beyond for *prima facie* right, the result must be the affirmance of the decision appealed from, for, if the former course be followed, the son's survivorship must be found as a fact, and if the latter be followed, every other ground for *prima facie* right must be deemed secondary and subordinate to that of the unextinguished and unextinguishable preference made by the will and the law in the son's favor.

The evidence was sufficient to show that the son survived his mother: by reason of his better size, stronger sex and the nature of his clothing, he was better able to withstand the death cause; his knowing how to swim would ward off despair and collapse and give him self-possession to look out for wreckage and keeping afloat; his younger and warmer blood would

stand him in good stead in the icy waters of the North sea; " when shipwreck occurs men are more apt to be saved than women. . . . Persons with apoplectic tendencies (the mother was corpulent and short winded) are more apt to be struck with the disease when precipitated into the water." Wharton and Stillé, Med. Jur. § 726. Of 60 women and 70 children on the Elbe only one woman survived; only one woman out of 176 was saved on the ·Burgoyne; not a woman or child was saved on the Atlantic.

Where rested the fatal *onus* at the start? As between the Home as legatee, and testatrix's next of kin—if not her son, then her brother and sister. The next of kin having a *prima facie* right, the *onus probandi* is on the other party.

In such cases the common law requires evidence from start to finish, judgment going in the end, if there be not evidence enough to shift the burden of proof, against the party resting under that burden at the start.

Neither a codemise nor a survivorship is presumed by law, nor is the evidence such cases admit of ·sufficient to shift the burden of proof.

As between a testator's next of kin and his legatee, the burden rests on the legatee of proving the contingency or contingencies that underlie his bequest, the next of kin having *prima facie* right at the start; or, as applied to the cases at bar, the burden lies on the Home of proving codemise or the mother's survival (*i. e.* the son's non·survival), the next of kin, whoever they were, having *prima facie* right.

Citing many of the authorities on appellants' briefs and also Best's Ev. Book III, pt. 1, 369; *Balder* v. *Middeke*, 92 Ill. App. 227; Greenleaf on Evidence, 16th ed. note 5, § 30, p. 126; *Hildebrant* v. *Armes*, Texas Ct. of Appeals, 1901, 66 S. W. 128; *Ommany* v. *Stillwell*, 23 Beav. 330.

. In the construction of the will the most natural intention was that the property was not to be willed away from the son at all *unless* he was no longer in being to take it at his mother's death; and the real question is not whether the son survived any length of time, but where the burden rests of proving the order of deaths. The claim of the Home draws its strength,

not so much from what *is* in the will as from what, judging from this post-mortem statement, *ought* to be there.

As to who are the next of kin, the *onus* rests on the *remoter* kin to prove that all the *nearer* kin once known to exist had ceased to exist before the testator's death. *Emerson* v. *White*, 29 N. H. 482; *Schaub* y. *Griffin*, 84 Maryland, 557; *Posey* v. *Hanson*, 10 D. C. App. 496; Wharton's Ev. sec. 1280; *Cowman* v. *Rogers*, 73 Maryland, 403. Other cases cited in opposing briefs distinguished.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The rule is that there is no presumption of survivorship in the case of persons who perish by a common disaster, in the absence of proof tending to show the order of dissolution, and that circumstances surrounding a calamity of the character appearing on this record are insufficient to create any presumption on which the courts can act. The question of actual survivorship is regarded as unascertainable, and descent and distribution take the same course as if the deaths had been simultaneous. *Underwood* v. *Wing*, 4 De Gex, M. & G. 633; *Wing* v. *Angrave*, 8 H. L. Cas. 183; *Newell* v. *Nichols*, 12 Hun, 604; *S. C.*, 75 N. Y. 78; *Johnson* v. *Merithew*, 80 Maine, 111; *Cowman* v. *Rogers*, 73 Maryland, 403; *Russell* v. *Hallett*, 23 Kansas, 276; *In re Willbor*, 20 R. I. 126; 1 Greenl. (15th ed.) §§ 29, 30.

Conceding this to be so, the next of kin of Mrs. Rhodes contend that her estate has passed to them as in case of intestacy, because it does not appear that the son survived the mother, or that the mother survived the son, and the estate was given to the son only in the one event, and to the Young Women's Christian Home only in the other. This view was rejected by the District Supreme Court in holding that the intention of the testatrix was plain that the Young Women's Christian Home should take in the event that the husband and son did not survive her, and should be carried out; and the Court of Appeals rejected it in holding that the will by its terms vested the

estate in Eugene Rhodes immediately on the testatrix's death, and that a *prima facie* right existed in the personal representatives of the son, which was not displaced by proof of the mother's survival.

The cardinal rule is that the intention of the testator expressed in his will, or clearly deducible therefrom, must prevail if consistent with the rules of law. And another familiar rule is that the law prefers a construction which will prevent a partial intestacy to one that will permit it, if such a construction may reasonably be given. *Kenaday* v. *Sinnott*, 179 U. S. 606, 616.

In this case, we think it is apparent that Mrs. Rhodes designed to dispose of her entire property; to provide for her husband by securing to him for life an income from one half of her estate; to provide for her son by leaving him the estate absolutely, subject to the husband's income; and, if her son died before his father, that the husband should have the income of the whole estate for his life, and at his death the estate should go to the Young Women's Christian Home. But that if her husband and son should both be dead when she died, the estate should go at once to the charitable institution, that is to say, that if they did not survive her, the property on her death was immediately to take that destination.

But the argument is that the testatrix's wishes cannot be carried out, inasmuch as, it is insisted, each of the devises and bequests was on the express condition of survivorship, and to give effect to the alleged intention would require the interpolation of some phrase covering the contingency of inability to ascertain survivorship, which interpolation would be wholly inadmissible.

This, however, is matter of construction, and if the state of facts at the time of Mrs. Rhodes' death did not substantially differ from what the will shows she contemplated when it was executed, then no interpolation is required, and the property must go according to the intention necessarily deducible.

The applicable principle is well expressed by Mr. Justice

Gray, then Chief Justice of Massachusetts, in *Metcalf* v. *Framingham*, 128 Massachusetts, 370.

The case is stated in the head notes thus: "A testator bequeathed personal property in trust for the benefit of his wife's sister and her husband during their lives, as follows: During her life, to pay the net income to her semi-annually; in case she should die before him, to transfer one half of the principal to a charitable institution, and to pay the income of the remainder to him during his life; in case he should die before her, then at her death to transfer the whole of the principal to the same institution. She died before her husband, and one half of the principal was paid to the institution and the other half kept in trust for him. *Held*, that on his death the institution was entitled to this part of the principal also, and that it did not pass to the residuary devisees; although a similar bequest for the benefit of another husband and wife contained an express direction for a transfer of the second half of the principal to the charitable institution upon the death of the survivor."

Gray, C. J., said: "The decision of this question doubtless depends upon the intention of the testator, as manifested by the words that he has used, and an omission to express his intention cannot be supplied by conjecture. But if a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared."

"It is a question in each case," said Mr. Justice Matthews in *Robison* v. *Portland Orphan Asylum*, 123 U. S. 702, "of the reasonable interpretation of the words of the particular will, with the view of ascertaining through their meaning the testator's intention." In that case Robison left a will providing, thirdly, that his widow should have the income of all his estate, with the right to spend it, but not to have it accumulate for her heirs; fourthly, that if his sisters, Ann Smith and

·Eleonora Cummings Robison, " be living at the death of myself and wife, Jane S. Robison aforesaid, that they or the one that may be then living shall have the income of all my estate so long as they may live, and at their death to be divided in three parts, one third part of the income to go to the Portland Female Orphan Asylum," and one third to each of two other institutions. Both sisters died before the testator.

It was ruled that the fact that the sisters died before their brother, " whereby the legacy to them lapsed altogether, is not material, because if property be limited upon the death of one person to another, and the first ˙donee happen to ˙predecease the testator, the gift over would, of course, take effect, notwithstanding the failure, by lapse, of the prior gift;" that unless it appeared on the face of the will " that the gift to the defendants was not intended to take effect unless the prior gift to Ann Smith and Eleonora Cummings Robison took effect, the former must be considered as taking effect in place of and as a substitute for the prior gift which, by reason of the contingency, has failed;" and that considering the third and fourth subdivisions together, the limitations were to be taken as a complete disposition of his estate, in the mind of the testator, who did not intend to die intestate as to any portion thereof, giving to the widow an estate for life, with an estate over for life to the sisters, contingent on surviving the widow, and with the ultimate remainder to the charitable institutions.

In *Newell* v. *Nichols*, 12 Hun, 604, affirmed in 75 N. Y. 78, a wife had died leaving a husband and two children, a son and a daughter. By her will she created three funds, one of $30,000, the income of which was to go to her husband, and, on his death, the principal to the heirs of her body then living, and in default of such heirs to certain named remaindermen ; another fund of $15,000, the income to be paid to the daughter during her life, the principal to be paid at her death to the heirs of her body then living ; in default of such heirs, to her appointees by will ; and in default of appointment, to the heirs of the body of the testatrix then living, and in default of such heirs, then to the same remaindermen ; while a third sum of $15,000 was settled upon the son as to the income, with the same provisions

as to the principal at his death as in respect of the daughter. The husband and children were lost at sea, and there was no evidence of survivorship between them. The case was decided at special term by Van Vorst, J., whose careful and elaborate opinion was adopted by the court in general term, and fully approved by the Court of Appeals. It was held that the intention of the testatrix plainly was that the limitation over to the remaindermen should be effectual if for any reason the children could not take, and that the death of the children without issue or appointment, under the circumstances, and in the absence of evidence of survivorship, entitled the remaindermen to have the limitation carried into effect.

It was observed by Van Vorst, J.: " Where a devise is limited to take effect upon a condition or contingency annexed to a preceding estate, if that preceding estate should not arise the remainder over will take place, the first estate being considered as a preceding limitation and not as a preceding condition. . . . As when a testator meant to dispose of all his property and uses the words, 'if the legatee should not survive,' held to mean 'if the preceding legacy should from any cause fail.' "

*Underwood* v. *Wing* and *Wing* v. *Angrave* are relied on to the contrary. 19 Beavan, 459 ; 4 De Gex, M. & G. 632 ; 8 H. L. Cas. 183.

The facts were these : Underwood and his wife had three children—Catherine, Frederick and Alfred. Being about to emigrate with their children, Mr. and Mrs. Underwood made mutual wills, dated October 4, 1853. Mr. Underwood by his will devised his real and personal estate to Wing, his heirs, etc., in trust for Mrs. Underwood, her heirs, etc., absolutely ; and the will proceeded : "And in case my said wife shall die in my lifetime, then I direct that my said real and personal estate shall be held by my said trustee, upon trust for such of them, my three children, Catherine Underwood, Frederick Underwood and Alfred Underwood, as, being sons or a son, shall attain the age of twenty-one years, and being a daughter, shall attain that age, or marry under that age, to be equally divided between or among them, share and share alike ; and in case all

of them my said children shall die under the age of twenty-one years, being sons, or under that age and unmarried, being a daughter, then I give, devise and bequeath all my real and personal estate, as aforesaid, unto and to the use of the said William Wing, his heirs, executors, administrators and assigns, to and for his and their own absolute use and benefit." And the testator appointed his wife and defendant Wing executors. Mrs. Underwood by her will, made by virtue of a power, devised, bequeathed and appointed all the real and personal estate subject to the power, to Mr. Underwood, his heirs, etc., absolutely; and the will proceeded: " (Subject to the estates and interests of my children therein, under or by virtue of the will of the said John Tulley, deceased.) And in case my said husband should die in my lifetime, then I devise, bequeath and appoint the said hereditaments and premises, and sum and sums of money, and arrears of income aforesaid, unto and to the use of William Wing, his heirs, executors, administrators and assigns, to and for his and their own absolute use and benefit." And she appointed her husband and William Wing executors.

Mr. and Mrs. Underwood and their three children embarked for Australia, their ship foundered, and all on board, with the exception of one sailor, perished. Both parents and the two boys were washed into the sea by the same wave, but the daughter survived for half an hour. All the children died under twenty-one and unmarried. Wing proved both wills and plaintiff obtained letters of administration of the estate of Catherine Underwood. 19 Beav. 459, 460.

The courts agreed in the conclusion that at common law there could be no presumption of prior decease in the absence of proof, although the evidence tended to show that the husband was in good health and an able swimmer, while his wife was in delicate health, and their children of tender age; and this ruling has ever since been accepted in the English courts and by the uniform current of authority in the United States.

Under the wills, the husband, wife and children, having practically died simultaneously, the intention of both testators that their estate should pass to Mr. Wing seemed plain, but

the House of Lords (and the courts below) held otherwise, and that as Mr. Wing could not show either that the death of the husband occurred in the wife's lifetime, or that the wife's death occurred in the husband's lifetime, he could receive neither estate. In the construction which produced this result it cannot be said that the courts of this country have generally concurred. Lord Campbell, then Lord Chancellor, dissented, and, referring to the wife's will, said : " Of course, I fully recognize all the cases where, there being in a will a gift really meant to be on condition, or the happening of a particular event, the court decided that it could not take effect unless the condition was performed, or the event had happened. But the present seems to me to be a case of substitution ; to take effect on failure of the prior estate." Granting that effect is to be given to the expressed, not the conjectural or probable intention of testators, he thought that by this will the testatrix clearly expressed her intention that if her husband did not take the property, William Wing should take it. " The lapse of the bequest to her husband by his predecease being substantially the only event upon which the bequest to him could fail, when she says, ' In case my said husband should die in my lifetime,' does she not, in substance say, in case the bequest to my husband should fail, then William Wing is the object of my bounty, and all shall go to him ? She has not provided for the event of there being an impossibility to determine whether she or her husband died first. But although she has not in terms provided for this event, she has clearly intimated her intention, that in case of the gift to her husband not taking effect, the ulterior gift to William Wing should take effect. And this seems to me not to be an interpolation into her will, but a necessary implication from what she has said. How can it be supposed that if she had foreseen the event of an uncertainty as to whether she or her husband died first, so that her husband could not take from that uncertainty, she would have altered the intention she had so plainly expressed in favor of William Wing ? Can it be considered possible that William Wing would, in that event, have ceased to be the object of her bounty ? What other destination of the property, by her, can

be conjectured? If her husband should not take, William Wing was substituted for him. . . . It seems to me to be a fallacy to say that this was a gift merely on the happening of a particular event, unless that event is taken to be the failure of the prior gift to her husband."

It will be perceived that it was held that for the purpose of giving effect to the wills, the husband was not to be assumed to have survived the wife, nor the wife to have survived the husband; and yet, the wills having been thus eliminated, it was declared that the heirs and next of kin of Mr. Underwood were entitled to his property as though he had been the survivor, and that the heirs and next of kin of Mrs. Underwood should take her property as though she had been the survivor.

Whether in a given case a condition precedent, a condition subsequent, or a conditional limitation, is prescribed, is, in the absence of unmistakable language, matter of construction. And conditions cannot be annexed from words capable of being interpreted as mere description of what must occur before the estate given can arise. *Edgeworth* v. *Edgeworth*, L. R. 4 H. L. 35.

As in all of these cases, so in this, we are remitted to the language of the will to ascertain the intention of the testatrix, and if that intention is clearly deducible from the terms used, taking the whole will together, then we are bound to give that construction which will effectuate and not defeat it. Reading this will from the standpoint of the testatrix, as we must, we think it not open to doubt that she intended to dispose of all her estate, and did not intend to die intestate as to any part of it; that she had in mind only three objects of her bounty, her husband, her son and the Home, and that her intention, failing husband and son, was that the Home should take. If husband alone survived it was to go to the Home at his death. If neither husband nor son survived it was to go to the Home at once. Is her manifest intention to be defeated because instead of saying, "If neither my husband nor my son should survive me, I give and bequeath my property to the Home," she said: "In the event of my becoming the survivor of both my husband, Oliver Wheeler Rhodes, and of my son, Eugene Rhodes, I give and

bequeath all my property to the Young Women's Christian Home ? "

We do not feel compelled to so hold, and, by accepting so technical and literal a view, to reach an adverse result on the theory of a change in the burden of proof, or of an accidental omission to prevent it.   This is not a case of supplying something omitted by oversight, but of intention sufficiently expressed to be carried out on the actual state of facts.   And as the estates of persons perishing in a common disaster, intestate, notwithstanding the statutes of descent and distribution may not have made provision in respect thereof, are disposed of as if each survived as to his own property, we think, upon principle, that the property of Mrs. Rhodes should go as directed as if she survived her son, in the absence of proof to the contrary.

It necessarily follows that title did not *prima facie* vest in the son, who is not shown to have survived his mother, and must be taken to have died at the same time.   The property remained where it was vested, there being no evidence to show that it had been divested.

The situation is illustrated by the case of *In re Willbor*, 20 R. I. 126.   There Charlotte, Martha and Eliza Willbor, three sisters, perished in the same calamity, and there was nothing from which it could be inferred that either survived the other. Each left a will devising all her real and personal property, excepting certain legacies, to her two sisters, or either of the survivors, and to their heirs and assigns forever.   The Supreme Court of Rhode Island said : " As all three of the testatrices lost their lives in the same disaster, and no fact or circumstance appears from which it can be inferred that either survived the others, the question of survivorship must be regarded as unascertainable, and hence the rights of succession to their estates are to be determined as if death occurred to all at the same moment.   .   .   .   If all three of the testatrices are to be regarded as having died at the same moment, it follows that the bequest and devise in each of their wills to the two sisters or either of the survivors did not take effect, there being no interval of time as between the deaths of the three during which

titles to property could vest, and the wills therefore stand as if they contained only the bequests to the legatees subsequently named."

The result is that the property passed under the will to the Home, and neither the next of kin of the mother nor the next of kin of the son can defeat its destination.

*The decree of the Court of Appeals is reversed and the cause remanded with a direction to affirm the decree of the Supreme Court.*