In re MARTIN ESTATES.
CHRISTENSEN et al. v. MARTIN et al.

No. 6832. Decided February 14, 1946. (166 P. 2d 197.)

See 33 C. J. S., Executors and Administrators, sec. 44; 21 Am. Jur., 418.

*Udell R. Jensen,* of Nephi, and *A. W. Jensen,* of Ephraim, for appellants.

*Dilworth Woolley,* of Manti, for respondents.

TURNER, Justice.

Mary Ann Martin died intestate in Sanpete County, Utah, on January 28, 1917. She left surviving, her husband, Samuel Henry Martin, three daughters and a son. The daughters were Jessie Martin Freston, Esther Martin Jackson and Sylvia Martin Reynolds. The son was Samuel Martin. At the time of Mary Ann Martin's death all of her children were living.

Samuel Henry Martin, the surviving husband of Mary Ann Martin, died intestate in Sanpete County, Utah, on April 16, 1944. Sylvia Martin Reynolds was his only child surviving him. His daughter Jessie Martin Freston died June 30, 1928. She left surviving, her husband, a son and a daughter. Esther Martin Jackson, the other daughter, died September 6, 1939. She was survived by her husband and five children. Samuel Martin, the only son of Mary Ann Martin and Samuel Henry Martin, died March 17, 1943, survived by his wife, Ruby A. Martin, and three sons, namely, Lowell, Reed and Fremont Martin.

A few days after the death of Samuel Henry Martin, Sylvia Martin Reynolds, joined by Alice Freston Olsen and David E. Freston, the daughter and son of Jessie Martin Freston, deceased, filed a petition in the District Court, Probate Division, of Sanpete County, asking that Sylvia M. Reynolds be appointed administratrix of the joint estates of Mary Ann Martin and Samuel Henry Martin. The petition

contained allegations of the deaths of Mary Ann Martin and Samuel Henry Martin; that each had died intestate; and that each had left estate situated in Sanpete County. The petition also contained an allegation as to who were the surviving heirs of the intestate parties. Upon the face of the petition it is apparent that the surviving spouses of the children of Mary Ann and Samuel Henry Martin who survived their mother, but who preceded the father in death, were not named as heirs.

The petition also definitely alleges that Mary Ann Martin left estate consisting of real estate with some improvements and that Samuel Henry Martin left estate consisting of both real and personal property. From the descriptions of the realty it is certain that the property of the one is not property inherited from the other.

Lowell, Reed and Fremont Martin, surviving sons of Samuel Martin and grandsons of Mary Ann and Samuel Henry Martin, filed objections to the petition just mentioned. They also filed an answer and with it filed a cross-petition. They objected to the appointment of Mrs. Reynolds under Sec. 102-4-5, U. C. A. 1943, on the ground that she was a married woman. When the petitioners and objectors came before the court this ground of objection was recognized by the court. Mrs. Reynolds and her co-petitioners then nominated Paul E. Nelson for appointment as administrator. This was objected to and after a hearing the court denied the cross-petition of Lowell Martin and his brothers for the appointment of Lowell Martin as administrator; denied the request of Mrs. Reynolds for the appointment of Paul E. Nelson, and appointed James Frost as administrator, who then qualified. Subsequently Mrs. Reynolds petitioned the court for the discharge of James Frost on the ground that he refused to act. Mr. Frost later filed a written resignation and was discharged as administrator.

We shall not attempt to state all the details of the proceedings. The nomination of Paul E. Nelson was revived, findings and conclusions were made and entered and Nelson was appointed to act as administrator of the estates. The

cross-petition of Lowell Martin et al., asking for his own appointment, was again denied. The record shows that Nelson refused to qualify and on December 28, 1944, a third petition for letters of administration was filed by Mrs. Reynolds and the two grandchildren asking for the appointment of Hans Christensen, a stranger to the estates, as administrator. After issues were joined a hearing was had and the court appointed Christensen administrator to administer both estates jointly. It is from this order that the objectors appeal. No attempt was ever made to probate the estate of the mother, Mary Ann Martin, until these proceedings were commenced following the death of the father, Samuel Henry Martin, in which the petitioners asked for administration of the two estates jointly.

In support of its order appointing Christensen administrator of the estates, the court found, in substance, that Mary Ann Martin died intestate on January 28, 1917, and at the time of her death she was the owner of a tract of land containing 4.7 acres upon which there is a small home and other improvements of the probable value of $500 with an annual rental value of about $47.50; that she left surviving her as her heirs at law her husband and the four children hereinabove named; that Samuel H. Martin, the husband, died intestate April 16, 1944, and at the time of his death he was owner of a tract of farm land (located across the road and to the west of the home property) containing 26.22 acres, together with ten shares of the capital stock of the Moroni Irrigation Company, subject to a certain tax deed and a claimed ownership by Ruby A. Martin, the widow of the deceased son Samuel Martin; that the water right is represented by a certificate of stock issued to Ruby A. Martin prior to the death of Samuel H. Martin; that the probable value of this land is $2600 and the water stock $750 and that the land has an annual rental value with the water right of about $260.00; that the deceased also died possessed of a small amount of cash and personal property; that all of the property described is in the possession of Ruby A. Martin who claims to be the owner thereof and that it may

be necessary that an action be brought to recover possession and quiet the title to such property for the use and benefit of the heirs and creditors of the estates.

By assignments of error, appellants (objectors) raise several questions on this appeal which may be condensed and substantially stated as follows: (1) That the court erred in appointing Christensen as administrator on the nomination of Mrs. Reynolds on the ground that her disqualification to act as administratrix because of being a married woman deprived her of the right to nominate; (2) that the court erred in appointing Christensen and ordering a joint administration of the two estates because the property of Mary Ann Martin did not descend to the estate of Samuel Henry Martin and there is a diversity of heirship which precludes joint administration and the court failed to so find; and (3) that the court erred in appointing an administrator of either or both estates because the record shows that Ruby A. Marton, the widow of the deceased son Samuel Martin, at the time of filing the third petition for letters was the owner of the real estate and water stock involved.

(1) As to the question of nomination, we quote Sec. 102-4-5, U. C. A. 1943, relating to the competency of married women to act as administratrices:

"When objection is made by any person interested in an estate, a married woman must not be appointed administratrix. When an unmarried woman appointed administratrix marries, the court may, upon the motion of any such interested person, revoke her authority and appoint another person in her place."

Sec. 102-4-1, U. C. A. 1943, relating to whom letters of administration may be granted, provides:

"Administration of the estate of a person dying intestate must be granted to some one or more of the persons hereinafter mentioned, the relatives of the deceased being entitled to administer only when they are entitled to succeed to his personal estate or some portion thereof; and they are, respectively, entitled thereto in the following order:

"(1) The surviving husband or wife.
"(2) The children.

"(3) The father or mother.
"(4) The brothers or sisters.
"(5) The grandchildren.
"(6) The next of kin.

"Administration may be granted to one or more competent persons, although not otherwise entitled to the same, *at the written request of the person entitled* filed in the court." (Italics added.)

Appellants contend that when they objected to the appointment of Mrs. Reynolds as administratrix on the statutory ground that she was a married woman, she thereby was rendered incompetent and was deprived of any right to nominate an administrator, or, if she was not so deprived, she lost or waived any further right of nomination when she nominated Paul E. Nelson who refused to qualify and act.

Sec. 102-4-4, U. C. A. 1943, relating to persons incompetent to act as administrator or administratrix, provides that:

"No person is competent or entitled to serve as administrator or administratrix who is either:

"(1) Under the age of majority or an incompetent person; but in such cases letters must be granted to his or her guardian, or, in the discretion of the court, to any person entitled to administration;

"(2) Not a bona fide resident of the state; but if the person entitled to serve is not a resident of the state, he may request the court or judge to appoint a resident of the state to serve as administrator, and such person may be appointed;

"(3) Convicted of an infamous crime;

"(4) Adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity; or,

"(5) The surviving partner of a firm of which the decedent was a member."

This statute expressly designates those who are incompetent to act as a matter of law. Even strangers to the estate, if otherwise qualified, may be appointed to administer it.

Appellants argue that, because of the disqualification of Mrs. Reynolds to serve by reason of being a married woman, she thereby became incompetent to nominate an administrator. She falls in the second class of persons enumerated by Sec. 102-4-1, supra. Grandchildren fall in the fifth class so enumerated. This statute further provides that:

"Administration may be granted to one or more competent persons, although not otherwise entitled to the same, *at the written request of the person entitled* filed in the court." (Italics added.)

Mrs. Reynolds became *disqualified* to serve when objection was made as provided in the statute, but such disqualification did not render her *incompetent* to nominate. This right was not exhausted when she nominated Nelson and he refused to qualify and act. It should be remembered that Mrs. Reynolds filed her petition for letters shortly after the death of her father and within the three months period prescribed by the statute and thus preserved this right. See Sec. 102-4-3, U. C. A. 1943; *In re Johnson's Estate,* 84 Utah 168, 35 P. 2d 305; *In re Smith's Estate,* 85 Utah 606, 40 P. 2d 180; *In re Owens' Estate,* 30 Utah 351, 85 P. 277. Even though the statute declares them to be incompetent to administer an estate, infants and incompetents, through guardians, and nonresident heirs may exercise the right of nomination under the statute.

Appellants do not seriously contend that there is merit to their argument that Mrs. Reynolds "waived" her right to nominate. A right cannot be waived by exercising it. Had she failed to file a petition for letters of administration within the statutory period, she might have waived her right to nominate. The cases cited by appellants on this point involve express waivers under circumstances not involved in the instant case and are therefore of no assistance.

(2) In considering this question of joint administration and heirship, we quote Sec. 102-4-6, U. C. A. 1943:

"In all cases where the estate left by a deceased person has descended from another deceased person whose estate has never been probated,

or where two or more deceased persons held property during their lifetime as tenants in common, and neither estate has been probated, and where the heirs are the same, the court may grant letters of administration upon such estates jointly, and they may be administered the same as if they were but one estate."

Appellants contend that the estate, if any, of which Samuel Henry Martin died possessed, did not descend from Mary Ann Martin, his wife, who predeceased him over twenty-seven years; that Mary Ann and Samuel Henry Martin never held the property involved as tenants in common and that the heirs in the two estates are not the same, and therefore it was error for the court to order administration of both estates jointly.

At the time of the intestate death of Mary Ann Martin, the succession statute which applied to any estate left by her was substantially as it now appears in Sec. 101-4-5 (1), U. C. A. 1943:

"* * * if the decedent leaves a surviving husband * * * and more than one child living * * * one-third to the surviving husband * * * and the remainder in equal shares to his children, and to the issue of any deceased child by right of representation * * *."

Samuel Henry Martin, the husband, and four children survived Mary Ann Martin at her death. The husband under the above statute therefore inherited an undivided $\frac{1}{3}$ interest in the estate left by the deceased wife; the remainder went to the children.

At the time of the intestate death of the father, one daughter, Mrs. Reynolds, and the children of the two deceased daughters and of the one deceased son survived him. The succession statute applying to the estate at that time is contained in Sec. 101-4-5 (2), supra, as follows:

"If the decedent leaves no surviving husband or wife, but leaves issue, the whole of the estate goes to such issue, and if such issue consists of * * * one child living and the issue of one or more deceased children, then the estate goes in equal shares to the * * * child living and the issue of the deceased * * * children by right of representation."

Sec. 101-4-23, U. C. A. 1943, provides that:

"Inheritance or succession 'by right of representation' takes place when the descendants of any deceased heir take the same share or right in the estate of another person that their parents would have taken if living * * *."

The statute, Sec. 102-4-6, first above quoted under this heading, has been construed by this court only once before (*In re Cloward's Estate,* 95 Utah 453, 82 P. 2d 336, 338, 119 A. L. R. 123) and in that case the construction hinged on the question as to when an estate has been probated. However, the opinion in that case poses several questions as to the meaning and interpretation of this section which it was not necessary there to answer, but of which two at least must be answered in the instant case, namely:

" * * * (a) Does the clause 'Where the heirs are the same' apply to the case when the estate of a deceased person descended from another deceased person as well as to a case where the estates of deceased persons had been held by tenants in common during their lifetime? (b) Does the first clause of the section require that the *entire estate* of the second deceased person shall have descended from another deceased person?" (Italics added.)

We construe that statute, at least under the facts presented in the case at bar, as containing two parts ■ which must be read separately as follows: First,

"In all cases where *the estate* left by a deceased person has descended from another deceased person whose estate has never been probated, * * * the court may grant letters of administration upon such estates jointly, and they may be administered the same as if they were but one estate."

And, second,

"In all cases * * * where two or more deceased persons held property during their lifetime as tenants in common, and neither estate has been probated, *and where the heirs are the same,* the court may grant letters of administration upon such estates jointly," etc.

In the instant case the estate left by Samuel Henry Martin consisted of the 26.22 acre tract of farm land, the water

stock and some personal property which he owned in his own right at the time of his death, and an undiveded ⅓ interest in the estate left by Mary Ann Martin, ■ the other "deceased person." Following the language of the statute, therefore, it cannot be said that *"the estate"* left by Samuel Henry Martin "descended from another deceased person," within the strict meaning of the words quoted when only a small fraction of his estate so descended.

Applying the second provision of the section to this case, in view of appellants' contention that the heirs in the two estates are not the same, it is conceded that the property involved in the estates was never held by the deceased parents as tenants in common during their lifetime, and therefore this provision has no application here.

Appellants contend that the surviving spouses of the two deceased daughters and the one deceased son are heirs of the estate of Mary Ann Martin but not the heirs of Samuel H. Martin and that as such heirs they were entitled to notice of the probate proceedings, which was not given. Sec. 102-4-8, U. C. A. 1943, provides:

"When a petition praying for letters of administration is filed, the court or clerk must set the petition for hearing and give notice thereof by publication or by posting and by *mailing notices to the heirs.*" (Italics added.)

Who are the heirs of the estate of Mary Ann Martin, deceased? She was survived by her husband and four children. Three of these children died after the mother's death and prior to the death of the father. That part of the mother's estate which passed to these children who are now deceased, passed to their heirs upon their respective deaths. Therefore, the inheritance of these three deceased children passed to the surviving spouse and children of each. Thus, the surviving spouses became heirs of their deceased spouses, but they are not the heirs of Mary Ann Martin, their mother-in-law.

The result of our consideration of this second question, therefore, is that the court erred in appointing an adminis-

trator to administer the two estates jointly because *"the estate"* left by Samuel Henry Martin did not descend from his deceased wife, Mary Ann Martin, within the meaning of Sec. 102-4-6, supra.

(3) The third question relates to title of the real and personal property involved in both estates. The court found that, at the time of her death, Mary Ann Martin owned the 4.7 acre tract of land on which the family home is located, but found that Ruby A. Martin claims title ■ thereto by virtue of tax deeds from the county. The petitioners (respondents herein) contend that her title is void. Also, the court found Samuel Henry Martin to be the owner of the 26.22 acres of farm land at the time of his death, subject, however, to the claim of Ruby A. Martin that she is the owner of this land under a warranty deed executed and delivered to her by Samuel Henry Martin prior to his death, and that she is the owner of the water stock involved which is evidenced by a certificate of stock issued in her name prior to the father's demise. Respondents also contend that these claims of ownership are void.

The case of *Hampshire* v. *Woolley, judge,* 72 Utah 106, 269 P. 135, 138, is controlling on this point. There it was held that

"under the provisions of Secs. 7733 and 7734 of the Probate Code of this state [Secs. 102-11-18, 102-11-19, U. C. A. 1943] the [Probate] court is not given the power to hear and determine the title to property where the same is held under a claim of title."

It may be necessary, as contended for by respondents, that appropriate suits to quiet title be instituted.

The order and judgment of the lower court is reversed with costs to appellants.

LARSON, C. J., concurs.

WADE, Justice (concurring).

I concur with the result and also with the reasoning of the prevailing opinion on provisions (1) and (3).

I make some limitations to my concurrence on (2) which is to the effect that the court erred in ordering the two estates administered jointly. On that proposition the prevailing opinion holds that the trial court erred in ordering the two estates administered jointly because the statute, Sec. 102-4-6, U. C. A. 1943, provides that:

"In all cases where the estate left by a deceased person has descended from another deceased person whose estate has never been probated, * * * the court may grant letters of administration upon such estates jointly, * * *,"

and it interprets the term "the estate" as used in this statute to mean the entire estate of the person who died last must have descended from a person who had died before and does not mean merely a part of such estate had so descended. Since the entire estate of Samuel Henry Martin did not descend to him from his wife who died before he did, but only a part thereof this case does not come within the provisions of the statute and since there was timely objection made to the order that these two estates be administered jointly the court erred in making such an order. I concur with such holding and since that is all that is necessary to hold in order to dispose of this proposition, my concurrence is limited thereto.

I concur with this construction of the statute somewhat reluctantly because I feel that it excludes from the provisions of the statute many estates which have been thought to come within its provisions. The grounds on which I reach this construction are those stated in the prevailing opinion and also those stated by Mr. Justice WOLFE in his concurring opinion.

While it is probably not involved in this case, I also agree with the statement by Mr. Justice Wolfe in his concurring opinion to the effect that if two or more estates were probated jointly without objection thereto, such proceedings would not be invalid for lack of jurisdiction even though the joint probate of such estates is not authorized under this statute.

WOLFE, Justice.

I concur. However, I think it would be helpful to the bar in future situations and to the legislature if it desired to amend Sec. 102-4-6, U. C. A. 1943, to elaborate on its construction. It presents a Chinese puzzle. It cannot be literally construed without making the latter part of it practically nugatory in operation. Two people who die cannot leave the same heirs unless they died simultaneously. If they both die in a common disaster when it cannot be ascertained in fact who died first, the statutes may furnish presumptions of survivorship. Wigmore on Evidence, 3rd Ed., Vol. IX, note 2 to Sec. 2499, and Sec. 2532, pages 354 and 480, respectively, although there was no presumption of survivorship at the common law. *Faul* v. *French,* 187 U. S. 401, 23 S. Ct. 184, 47 L. Ed. 233.

Literal interpretation practically defeating the purpose of the statute, the question arises as to how far we should "liberalize" it. The section being short, I quote it here in full for handy reference.

"In all cases where the estate left by a deceased person has descended from another deceased person whose estate has never been probated, or where two or more deceased persons held property during their lifetime as tenants in common, and neither estate has been probated, and where the heirs are the same, the court may grant letters of administration upon such estates jointly, and they may be administered the same as if they were but one estate."

For analysis I designate the part reading

"In all cases where the estate left by a deceased person has descended from another deceased person whose estate has never been probated,"

as the left arm of the alternative. The part reading

"Where two or more deceased persons held property during their lifetime as tenants in common, and neither estate has been probated, and where the heirs are the same," * * *

as the right arm of the alternative. As will be later noted, the word "or" poses an alternative in form only. The word

"or" could be interpreted as meaning "provided however." The first question which arises is as to whether the phrase "and where the heirs are the same" applies to both or only the right arm. The punctuation might be helpful if there were not so much of it. I do not think we should give any significance to the comma before the word "or." It is very questionable whether it was used according to any technical rule. It is better to reason, from the context, the limitations of the section rather than depend on a comma especially when subsequent commas make doubtful any significance of the first one. That the phrase "where the heirs are the same" was intended to be limited to apply only to the right arm will appear from the following analysis.

At the outset it should be noted that where two estates are joined in probate even contrary to the provisions of the statute where proper notice was given and the court had jurisdiction of both estates within the meaning of Sec. 102-1-2, U. C. A. 1943, there is no ground for thinking that the administration would be void. They could be treated as if they had been separately administered, each having the same person as administrator. As to each estate the inclusion of the name of the other estate in the notices might be considered as surplusage. If one bond was given to cover both estates it would do what two separate bonds would do. Accounts of the administrator would in orderly accounting be separated as to each estate. The real difference would lie in the fact that they would be docketed as one and that there would be one filing fee, one attorney's and administrator's fee, and that papers filed, orders and decrees made would cover both estates. But I do not see that there would be any essentially different court action had the court operated on the estates separately and nothing which would affect the validity of the orders or decrees or of the whole probate because of the joinder.

In the discussion and illustrations that follow, I shall designate as "A" the person first deceased and as "B," the person who died subsequently. As noted in the main opinion the words "the estate" would seem to mean the *entire* estate

of "B." *"The estate"* of "B" could hardly be a part of his estate. Hence, the first requisite of joinability of estates for probate as far as cases coming under the left arm of the alternative is concerned is that *all* of "B's" estate must have descended from "A." But all of "A's" estate need not have descended to "B." Were it not for the statute, I can see no real objection to probating two estates where, in the passage of a part or the whole of "A's" property through "B" to "B's" heirs some property of "B" not devolving from "A" was included. The central thought would seem to be that when it appeared, upon the threshold of administration of "B's" estate, that property included therein had come from "A" whose estate had not been probated, it would be well to confirm the title of "A's" estate in "B." This would mean probating "A's" estate as to all "A's" successors including "B" and for that purpose there seems to be little reason why it should be required that *all* of "B's" estate should have descended from "A." But suffice it to say that the legislature required otherwise. It would appear better not to liberalize this section any further than necessary to prevent it from being practically nugatory, and leave to the legislature the matter of determining how much it might desire to expand it. We turn now to a consideration of the right arm of the alternative. Where property is held in common by "A" and "B," and "A's" portion descends on "B" it would be impossible for "B's" estate to consist of only what came from "A" because "B's" estate would include his own undivided half interest in the property. Thus it appears that it was necessary to make an exception of estates held in common from the restriction that "B's" estate should consist solely of property descended from "A." Had the left arm permitted joinder or probate of "A" and "B's" estates if "B's" estate consisted also of property not descended from "A" there would have been no need to make a separate category for estates held in common because there is no difference as far as the operation of the laws of succession are concerned, whether one's property is an undivided interest or whether it is separately owned. Thus it appears clear that

the left arm restricts the joinability of estates for probate to those where "B's" estate consists only of property descending from "A."

But when an exception was thus awkwardly made to the requirement that all of "B's" estate must flow from "A," in favor of estates held in common, it became further necessary to place a limitation on the joinability for probate of estates held in common. Having released estates in common from the restrictive language requiring property to have *descended* from another, without further limitation, it might have taken them out of the law of succession. Had the language of the right arm not contained the provision as to the heirs being identical, estates held in common by strangers in blood such as those of partners not related by blood could have been joined in probate. Hence, the limitation that the heirs be the same was evidently put in to apply only to estates coming under the right arm, that is, the phrase reading "where the heirs are the same" applies only to estates in common.

Before closing, some interesting observations under the sections presently construed may be made. I see no reason why the estate of the last decedent must descend *immediately* from "A" to "B." For instance, "X" may be the direct heir of "A," and "B" the heir of "X." Thus if "X" were "A's" son and he (X) died leaving only property descending from "A" to "B" his (X's) wife and that was the only property possessed by "B," then on "B's" death, the estates of "A," "X" and "B" could probably be joined in probate, the unifying factor being the parcel coming from "A's" estate and constituting the entire estate of both "X" and "B." It would seem that the chain of succession would be extended beyond the first taking from "A" so long as the estate of each decedent in line consisted entirely of property descended from "A."

Also turning again to the right arm I see no reason under the language of the section why the estate "B" consisting in part of a parcel held in common by "A" and "B" cannot be joined in probate with "A's" estate even though

"B's" estate owns other property. This follows from the fact, as we have previously seen, that there is no restriction as to "B's" estate consisting entirely of property descended from "A" in the case of tenants in common.

We still have the interesting problem in the case of estates whose property was held in common by the respective intestates as to what are the "same heirs." As stated before, literally it would be only on simultaneous death that they could have the same heirs. What was probably meant was that, abstracting the survivor of "A" and "B," the heirs would be the same. This would be so in the case of brothers and/or sisters both dying without spouses or children leaving a parent or parents. It would also be the case where a husband and wife died without remarrying, leaving only children of whom both were the parents. But it may be that the phrase "same heirs" might be given a broader meaning. It might include grandchildren of "A" who were also children of "B" where "A" and "B" held property in common. Strictly speaking, such grandchildren would not be the heirs of "A" if "B" survived "A" but they would have been the heirs of "A" if "A" had survived "B." In such case if "A" had no child except "B" and thus no other grandchildren, the group who would inherit from "B" would be exactly the same as the group who would have inherited from "A" had "A" survived "B," granted "B's" spouse predeceased "B." Of course if "B" had survived "A," "B" would be the heir of "A," but when "B" died his or her children, absent a spouse and remaining parent, would be not the heirs of "A" but would be exactly the same group that would have been the heirs of "A" had "B" and "B's" spouse predeceased "A." Other situations where the heirs would be the same can be thought of. But this matter of determining how far to extend the beneficiary group which is to be the unifying factor for the joinder for probate is for the legislature. I see at present no grave reasons why estates of "A" and "B" should not be joined in probate where "B's" descends from "A" even though "B" has additional estates than that received from "A." This would

oviate the necessity of the whole second arm of the alternative because estates containing as a part of the property formerly held by the intestates in common would be on exactly the same basis as estates whose intestates owned property entirely separately. The only unifying feature required would be that some part of "A's" estate must have descended to "B."

McDONOUGH, J., concurrs in the result.